[No. B201220. Second Dist., Div. Five. Jan. 5, 2009.]

C.R., Plaintiff and Appellant, v.
TENET HEALTHCARE CORPORATION, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to rules 8.1105(c) and 8.1110 of the California Rules of Court, parts I. through IV.C. and V. are to be published.

**COUNSEL**

Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and Susan M. Marcella for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, C.R., appeals from a judgment entered in favor of defendant, Tenet Healthcare Corporation, after its demurrer was sustained without leave to amend her first amended complaint. Plaintiff alleged she was a patient at Encino-Tarzana Medical Center (the medical center). She was molested by Ramon Eduardo Gaspar, one of defendant's employees. We reverse the dismissal order. Upon remittitur issuance, the trial court is to rule on defendant's motion to strike.

## II. FIRST AMENDED COMPLAINT

In reviewing an order after a demurrer is sustained without leave to amend, all well-pleaded factual allegations must be assumed as true. (*Naegele v. R.J. Reynolds Tobacco Co.* (2002) 28 Cal.4th 856, 864–865 [123 Cal.Rptr.2d 61, 50 P.3d 769]; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 946 [119 Cal.Rptr.2d 296, 45 P.3d 243].) The first amended complaint is the operative pleading and contains causes of action for sexual harassment in violation of Civil Code[1] section 51.9 (first); negligent hiring (second); negligent retention (third);

---

[1] Unless otherwise noted, all statutory references are to the Civil Code.

negligent supervision (fourth); and intentional severe emotional distress infliction (fifth). Defendant, a corporation with its principal place of business in Texas which regularly operates in California, is named in the first amended complaint. The medical center is also named as a codefendant. Defendant is the parent company of and owns the medical center. At various places, the first amended complaint uses the term "defendant" to refer to defendant; the medical center; Mr. Gaspar; and fictitiously named defendants. The first amended complaint seeks to certify as members of a class the following, "All persons who were subjected to continuous sexual harassment, assault, molestation, inappropriate touching, rape, attempted rape, negligent hiring, retention and supervision of defendants' employee[, Mr. Gaspar,] during the relevant time period." As will be noted, there is no issue on appeal as to the class certification allegations. Upon remittitur issuance, that is an issue that the trial court will resolve in connection with defendant's motion to strike.

The first amended complaint contains standard agency and ratification allegations: "At all times relevant herein, each Defendant designated . . . herein was the agent, partner, joint venturer, representative, servant, employee and/or co-conspirator of each of the other Defendants, and was at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement authorization and consent of each Defendant designated herein. . . . [¶] . . . Defendants and each of them were agents, principals, joint venturers, partners, representatives, servants, employees and/or co-conspirators of each of the other Defendants, each Defendant condoned and ratified the conduct of all other defendants, and was at all times mentioned herein acting within the course and scope of said agency and employment, authority and ratification." Thirty-two of the 72 paragraphs that apply to plaintiff's section 51.9 cause of action allege Mr. Gasper was defendant's agent or employee. According to most of the first amended complaint, defendant hired Mr. Gaspar as a certified nursing assistant. At another part of the first amended complaint, it is alleged Mr. Gaspar was hired in other capacities. Regardless of his exact capacity, Mr. Gaspar is alleged to have repeatedly sexually abused patients in the medical center and this misconduct is the subject of defendant's potential liability.

The first amended complaint makes two different allegations as to when Mr. Gaspar was hired to work at the medical center. At one point, the first amended complaint asserts that Mr. Gaspar worked at the medical center for approximately two to three years. At other places, it is alleged Mr. Gaspar worked at the medical center for two years. Prior to hiring Mr. Gaspar, defendant failed to conduct a background check on him. No effort was made to inquire of former employers as to why he left their employ. Had defendant conducted a background check, they would have discovered Mr. Gaspar had

"previously sexually harassed, assaulted, [and] inappropriately touched female patients" at hospitals where he had worked before being hired to work at the medical center. When hired to work at the medical center as a certified nursing assistant, "without any supervision," Mr. Gaspar was left in rooms with female patients who were vulnerable, ill, and in various stages of undress. Over a two-year period while working at the medical center, Mr. Gaspar "inappropriately touched, sexually harassed, molested, raped and attempted to rape, and assaulted female patients" while alone with them. Similarly, Mr. Gaspar engaged in similar misconduct with women who were employees of the medical center.

Female patients reported Mr. Gaspar's sexual abuse to defendant. However, each time defendant was advised of Mr. Gaspar's sexual misconduct, it "refused to investigate or interview anyone" or minimized or ignored the patient's complaints. Further, defendant refused to fire Mr. Gaspar, discipline him, prevent him from being alone with patients who were women, or provide appropriate supervision. In an effort to conceal Mr. Gaspar's sexual abuse of patients and employees, defendant destroyed, altered, and modified complaint reports, nurses' notes, patient charts, and employee files. The first amended complaint alleges: "Plaintiffs are informed and believe that several of [defendant's] managing agents and supervisors knew of the sexual harassment, molestation, assault, rape, and inappropriate touching by [Mr. Gaspar] towards the plaintiffs and refused to take any action, and hid the information so that [Mr. Gaspar] would continue to work for defendants." At another point, the first amended complaint alleges: "Numerous plaintiffs, including [C.R.], were sexually harassed, assaulted, molested and inappropriately touched by defendant's employee [Mr. Gaspar] throughout the two or three years that [Mr. Gaspar] continued to be employed by defendants who condoned and ratified his actions by allowing him to continue working despite the repeated acts of sexual harassment, assault, molestation, rape and inappropriate touching of plaintiffs, including [defendant's] own employees."

Prior to April 2006, Mr. Gaspar "inappropriately touched, sexually harassed, molested, and assaulted, raped or attempted to rape" members of the proposed class. In April 2006, Mr. Gaspar sexually abused plaintiff on "multiple" occasions. After April 2006, Mr. Gaspar continued to sexually abuse class members.

The first cause of action alleges that Mr. Gaspar's conduct as defendant's employee violated section 51.9, which protects plaintiff and fellow class members from unwanted harassment by a physician or person with a substantially similar relationship, such as a health care provider. The cause of action alleges: defendant and others are a business establishment engaged in providing professional and business services to the public; plaintiff and other class members were patients and had a professional

services relationship with defendant; and Mr. Gaspar engaged in conduct violative of section 51.9 by touching the patients in their private areas. The alleged touching included penetration of their vaginal areas and fondling their breasts while the patients were in a state of diminished capacity due to illness and were unable to resist his assaults.

The second cause of action for negligent hiring alleges that if defendant had conducted an adequate investigation it would not have hired Mr. Gaspar. The third cause of action for negligent retention alleges defendant received numerous complaints about Mr. Gaspar of inappropriate touching, molestation, assault and rape, but refused to investigate the allegations and continued to employ Mr. Gaspar. The fourth cause of action for negligent supervision alleges defendant, after complaints were made about Mr. Gaspar, failed to use reasonable care to supervise him, refused to remove him from his job and allowed him to be alone with female patients. The fifth cause of action for intentional severe emotional distress infliction alleges that retention of Mr. Gaspar as an employee was extreme and outrageous because defendant knew that he had molested, raped, and sexually assaulted female patients. Plaintiff sought compensatory and punitive damages, attorney fees, and prejudgment interest.

## III. DEMURRER AND JUDICIAL NOTICE REQUESTS

On April 19, 2007, defendant demurred to the first amended complaint and filed a motion to strike. Defendant asserted it did not employ Mr. Gaspar. Rather, defendant asserted that Mr. Gaspar was employed by an entity entitled AMI/HTI Tarzana Encino Joint Venture, which actually operated the medical center. At the demurrer stage, defendant relied on judicially noticeable documents in an effort to resolve the issue of who employed Mr. Gaspar. Defendant requested judicial notice of State of California licenses issued to the medical center for the years 2004 through 2006. As a result, defendant argued it did nothing to directly injure plaintiff and could not be vicariously liable for Mr. Gaspar's conduct as it did not employ him. In terms of the fifth cause of action for intentional severe emotional distress infliction, defendant argued the allegations were insufficient to indicate it intentionally sought to cause severe psychological injury to plaintiff.

In her opposition to the demurrer, plaintiff objected to defendant's judicial notice request. Additionally, plaintiff sought judicial notice of a Web site that purportedly demonstrated defendant owned and operated the medical center. The judicial notice request consisted of a Web site through Encino-Tarzana Medical Center, which is entitled, "Encino-Tarzana Regional Medical Center Tenet California." Plaintiff argued that the Web site instructs employment applicants to fill out an application in order to work for defendant. According

to plaintiff, an applicant seeking a career at the medical center is directed to go to the Web site www.tenethealth.com/careers. Plaintiff asserted that the license relied upon by plaintiff only proved the medical center operated under a fictitious business license. According to plaintiff, the first amended complaint sufficiently pleaded defendant's ownership, operation, and management of the medical center and that it hired, supervised, retained, and employed Mr. Gaspar.

The trial court granted defendant's judicial notice request, issued a detailed tentative decision and later adopted the tentative decision as the final order. The trial court denied plaintiff's judicial notice request. The trial court sustained the demurrer without leave to amend. The trial court ruled the section 51.9 claim was deficient because it is a stand-alone provision and not part of the Unruh Civil Rights Act (§ 51 et seq.); there was no allegation that defendant, a corporation, committed the acts of sexual abuse; the sexual assaults were alleged to have been committed by an individual; the statute does not impose liability on a business establishment such as a hospital; and a corporate entity cannot be held vicariously liable for sexual torts.

In sustaining the demurrer to the negligence-based claims, the trial court ruled insufficient facts were alleged as to defendant. The trial court concluded, "There are no ultimate facts alleging that Gaspar committed sexual torts against others, identifying the date, time, and place of such torts, or that [the corporate defendant] found out about them and was negligent in supervising and retaining Gaspar." The trial court found the intentional infliction of emotional distress claim to be insufficient because the negligence claims were deficient, there were no allegations of extreme and outrageous conduct, the employer could not be held vicariously liable for Mr. Gaspar's conduct, and no intentional conduct was alleged to show extreme and outrageous conduct by the employer.

The trial court denied plaintiff leave to amend. The trial court ruled defendant's *evidence* had *contradicted* the first amended complaint's allegations as to whether it employed Mr. Gaspar. The trial court further found defendant was not Mr. Gaspar's employer. According to the trial court, defendant's evidence established that the entity holding the license was owned or leased by a subsidiary. However, the trial court denied plaintiff's judicial notice request on the ground the Web site documents were not authenticated. (As previously noted, the documents purported to establish, at the medical center's Web site, prospective employees are referred to defendant's Web site.) At the hearing on the demurrer, the trial court asked plaintiff what "evidence" she had defendant was Mr. Gaspar's employer. At the conclusion of the hearing, the trial court adopted its tentative decision and sustained the demurrer without leave to amend. The trial court ruled defendant's motion to strike was moot.

Plaintiff filed this timely appeal from the judgment. Plaintiff also appealed from the trial court's rulings as to the medical center, which had filed a demurrer and motion to strike. Plaintiff dismissed her appeal against the medical center on September 4, 2007.

## IV. DISCUSSION

### A. Standard of Review

The Supreme Court has defined our sole responsibility as follows, " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; see *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We assume the truth of allegations in the first amended complaint that have been properly pleaded and give it a reasonable interpretation by reading it as a whole and with all its parts in their context. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *People ex rel. Lungren v. Superior Court, supra*, 14 Cal.4th at p. 300.) However, the assumption of truth does not apply to contentions, deductions, or conclusions of law and fact. (*People ex rel. Lungren v. Superior Court, supra*, 14 Cal.4th at pp. 300–301; *Moore v. Regents of University of California, supra*, 51 Cal.3d at p. 125.) Furthermore, any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity. (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752]; *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].) The Supreme Court has held: "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citations.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

### B. The Judicially Noticed Annual Licenses

 As noted, defendant sought judicial notice of three State Department of Health Services annual licenses pursuant to Evidence Code sections 452,

subdivisions (a) through (d) and (h) and 453.[2] The trial court judicially noticed three Department of Health Services annual licenses which state the medical center was operated by an entity entitled AMI/HTI Tarzana Encino Joint Venture from January 1, 2004, through December 31, 2006. None of the three licenses identifies the joint venturers. Between January 1, 2004, and December 1, 2006, the joint venture was licensed to operate a general acute care hospital in Tarzana, California and to provide specified medical services. We agree with plaintiff that the licenses do not negate the allegations of the first amended complaint concerning defendant's relationship with Mr. Gaspar. We agree with defendant that judicial notice may be taken of documents pertinent to the issues raised by a demurrer. (*Elmore v. Oak Valley Hospital Dist.* (1988) 204 Cal.App.3d 716, 722 [251 Cal.Rptr. 405] [statement filed with Secretary of State in a "Roster of Public Agencies"]; *Ascherman v. General Reinsurance Corp.* (1986) 183 Cal.App.3d 307, 310–311 [228 Cal.Rptr. 1] [judicial notice of release and reinsurance contract].)

■ But several decisions illustrate why the judicial notice order in this case does not permit the demurrer to be sustained. As to accepting the accuracy of the contents of judicially noticed documents, in *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374–375 [228 Cal.Rptr. 878], the Court of Appeal analyzed three different approaches to judicial notice at the demurrer stage: the truth of a document's contents will not be considered unless it is a judgment, statement of decision, or order (*Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349]; *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426]); the truth of statements may be accepted when made by a party but not those of third parties or an opponent (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604–605 [176 Cal.Rptr. 824]; *Able v. Van Der Zee* (1967) 256 Cal.App.2d 728, 734 [64 Cal.Rptr. 481]); and the contents of a document may only be accepted " ' "where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed." ' " (*Fremont*

---

[2] Evidence Code section 452, subdivisions (a) through (d) and (h) state: "Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451: [¶] (a) The decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state. [¶] (b) Regulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States. [¶] (c) Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States. [¶] (d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States. . . . [¶] . . . [¶] (h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Evidence Code section 453 states: "The trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: [¶] (a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and [¶] (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter."

*Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114 [55 Cal.Rptr.3d 621]; see *Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].) And the general rule is that the truthfulness and interpretation of a document's contents are disputable. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [84 Cal.Rptr.2d 843, 976 P.2d 214]; *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023, 1038 [96 Cal.Rptr. 338].)

In *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 364 [76 Cal.Rptr.3d 146], the trial court judicially noticed over 100 news media reports which purported to show that the plaintiffs should have had knowledge of misconduct at a fertility clinic. The Court of Appeal explained that the articles did not establish as a matter of law that the plaintiffs would necessarily have had notice of the misconduct. (*Id.* at pp. 365–367.) In *Fremont Indemnity Co. v. Fremont General Corp., supra,* 148 Cal.App.4th at page 112, the trial court judicially noticed a letter that bore the same date as a document adverted to in the complaint. The Court of Appeal held that the letter should not have been judicially noticed because, at the demurrer stage, disputed factual issues may not be resolved. In *Fremont Indemnity Co.,* the parties disputed the meaning of their contractual relationship and the enforceability of the contract. (*Id.* at pp. 115–117.) Thus although the existence of the letter may have been judicially noticeable—its contents and the effect of the letter were not judicially noticeable. (*Id.* at p. 113; see *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d at p. 1038.)

Here, the first amended complaint does not merely allege defendant owned the medical center. Rather, the first amended complaint alleges defendant employed Mr. Gaspar; defendant was a partner or joint venturer with other defendants; all defendants were agents acting within the course and scope of their agency; every defendant "directly or indirectly" employed Mr. Gaspar; and all defendants ratified the acts of one another. For purposes of ruling on the demurrer at issue, the licenses which state the medical center was operated by an entity entitled AMI/HTI Tarzana Encino Joint Venture does not conclusively negate the foregoing allegations. The licenses do not negate the allegations: defendant employed Mr. Gaspar; it negligently hired, retained, or supervised Mr. Gaspar; or its relationship to Mr. Gaspar was such that plaintiff's emotional distress claim may not proceed. On this basis, we disagree with defendant's assertion the licenses provide a basis for sustaining the demurrer without leave to amend. We need not address plaintiff's contentions her judicial notice request should have been granted or the mere existence of a conflict in the contents of the competing documents warranted, at the demurrer stage, the issue of defendant's relationship with Mr. Gaspar being resolved in her favor.

### C. First Cause of Action

#### 1. Section 51.9 and summary of arguments

As noted, the first cause of action is for a violation of section 51.9. Enacted in 1994, section 51.9 states: "(a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following elements: [¶] (1) There is a business, service, or professional relationship between the plaintiff and defendant. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons: [¶] (A) Physician, psychotherapist, or dentist. For purposes of this section, 'psychotherapist' has the same meaning as set forth in paragraph (1) of subdivision (c) of Section 728 of the Business and Professions Code. [¶] (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer. [¶] (C) Executor, trustee, or administrator. [¶] (D) Landlord or property manager. [¶] (E) Teacher. [¶] (F) A relationship that is substantially similar to any of the above. [¶] (2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe. [¶] (3) There is an inability by the plaintiff to easily terminate the relationship. [¶] (4) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described in paragraph (2). [¶] (b) In an action pursuant to this section, damages shall be awarded as provided by subdivision (b) of Section 52. [¶] (c) Nothing in this section shall be construed to limit application of any other remedies or rights provided under the law. [¶] (d) The definition of sexual harassment and the standards for determining liability set forth in this section shall be limited to determining liability only with regard to a cause of action brought under this section." Section 51.9 was the final result of various iterations of Senate Bill No. 612 (1993–1994 Reg. Sess.) (hereafter Senate Bill No. 612).

The uncodified provision of Senate Bill No. 612, section 1, states, "The Legislature finds and declares that sexual harassment occurs not only in the workplace, but in relationships between providers of professional services and their clients." The Legislative Counsel's Digest for Senate Bill No. 612 states: "Existing law makes it unlawful to harass an employee or employment applicant because of, among other things, sex. These provisions are enforced by the Department of Fair Employment and Housing. General provisions of existing law specify that all persons have the right to be free from violence or

intimidation by threat of violence, against their persons or property, because of certain bases of discrimination. [¶] This bill would provide a cause of action for sexual harassment that occurs as part of a professional relationship, as specified." (Legis. Counsel's Dig., Sen. Bill No. 612 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 271.)

Defendant, apart from contending it has nothing to do with the medical center, argues it had no "business, service or professional relationship" with plaintiff within the meaning of section 51.9, subdivision (a)(1) and it may not be held vicariously liable for Mr. Gaspar's sexual conduct. Defendant cites to the definitional language in section 51.9, subdivision (a)(1) which defines a "person" and argues that a hospital is not listed therein. In that vein, defendant argues as legal matter that in order for liability to arise, it is necessary a fiduciary relationship exist between a defendant and a plaintiff. Further, defendant argues as a corporation, it cannot engage in sexual abuse. These are the only contentions raised in defendant's demurrer and on appeal concerning the applicability of section 51.9 to plaintiff. We do not address other potential pleading arguments that can be made concerning section 51.9. Defendant's arguments that a section 51.9 claim has not been sufficiently alleged to withstand a challenge at the demurrer stage are unpersuasive.

### 2. Existence of a "business, service or professional" relationship

■ As noted, section 51.9, subdivision (a)(1), requires as an element of potential liability, "There is a business, service, or professional relationship between the plaintiff and defendant." Further, section 51.9, subdivision (a)(1) provides examples of a "business, service, or professional relationship" as follows: "(A) Physician, psychotherapist, or dentist. . . . [¶] (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, accountant, banker, trust officer, financial planner[,] loan officer, collection service, building contractor, or escrow loan officer. [¶] (C) Executor, trustee, or administrator. [¶] (D) Landlord or property manager. [¶] (E) Teacher. [¶] (F) A relationship that is substantially similar to any of the above." (§ 51.9, subd. (a)(1)(A)–(F).) Thus, defendant argues, a hospital or its employees are not listed in section 51.9, subdivision (a).

This contention has no merit. Mr. Gaspar is alleged to be a certified nursing assistant. As can be noted, section 51.9 applies when a service or professional relationship exists. Depending on the facts, a certified nurse assistant can have a service or professional relationship with a patient, as can other hospital staff. It depends on the facts. Here, it is expressly alleged Mr. Gaspar, as defendant's employee or agent, had responsibilities that were substantially similar to those provided by a physician. Mr. Gaspar's exact duties and his relationship with women who were patients can be fully litigated in a summary judgment proceeding or trial. Moreover, an entity

providing health care services that hires and supervises a certified nursing assistant to care for patients as alleged in the first amended complaint is either a service or falls within the ambit of a profession. Thus, at this stage of the proceedings, plaintiff has alleged sufficient facts to show defendant, a hospital owner which provides medical treatment for patients, falls within the scope of section 51.9.

### 3. Fiduciary duty contention

■ Defendant argues there is no allegation in the first amended complaint of the existence of a fiduciary relationship. Defendant argues, "[E]ach of the 'relationships' identified in section 51.9 bears the indicia of a fiduciary relationship, where the protected party places reliance and trust in the expertise and authority of the party with the superior knowledge/or control." As can be noted, the language of section 51.9 does not require the defendant have a fiduciary relationship with the plaintiff. As authority though for the argument that section 51.9 only applies when a fiduciary relationship exists with a plaintiff, defendant relies on a single legislative committee report prepared for the May 4, 1993 hearing on Senate Bill No. 612 as amended April 12, 1993. The report prepared for the May 4, 1993 hearing responds to questions raised by critics of the legislation that, as written, it may violate free expression rights: "The author's amendments have been included to get around the First Amendment issue by making sexual harassment, as defined dependent on a 'fiduciary relationship rationale.' [¶] A fiduciary relationship arises whenever confidence is reposed on one side, and domination and influence result on the other, the relation can be legal, social, domestic, or merely personal. The fiduciary relationship concept would apply in situations where the harasser is a doctor, lawyer, priest, and others." (Original underscoring.) We conclude there was no requirement that plaintiff allege the existence of a fiduciary relationship with defendant in order to state her section 51.9 claim.

As noted, section 51.9 is the result of Senate Bill No. 612. Originally introduced[3] on March 2, 1993, Senate Bill No. 612 only proposed amending

---

[3] Senate Bill No. 612, as originally introduced stated: "SECTION 1. Section 51.7 of the Civil Code is amended to read: [¶] 51.7. (a) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive. [¶] This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing. [¶] (b) As used in this section, 'sexual orientation' means heterosexuality, homosexuality, or bisexuality. [¶] (c) All persons within the jurisdiction of this state have the right to be free from sexual harassment. For purposes of this subdivision, 'sexual harassment' means unwelcome and persistent sexual advances, requests

section 51.7 and adding a new Education Code section 67394 and Government Code section 12960.5.[4] The early versions of Senate Bill No. 612 proposed amendments to section 51.7 and defined sexual harassment as occurring in part in the context of a fiduciary relationship. (Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended May 5, 1993, § 1,[5] as amended May 17,

for sexual favors, and other verbal, or physical conduct of a sexual nature that has the effect of intimidation. [¶] SEC. 2. Section 67394 is added to the Education Code, to read: [¶] 67394. (a) Sexual harassment, as defined in Section 212.5, shall not be tolerated at any institution of public higher education or any independent institution of higher education. [¶] (b) The regents of the University of California, the Trustees of the California State University, the Board of Governors of the California Community Colleges, and every private college or university in California with an enrollment of over 1,000 full-time students shall develop a written disciplinary policy regarding sexual harassment and shall make this policy available to all students, faculty, and staff. This disciplinary policy shall include all of the following: [¶] (1) The right of the person alleging sexual harassment to be granted an alternative living arrangement if the alleged harasser is a dormitory employee or resident. [¶] (2) The right of the person alleging sexual harassment to be present during any disciplinary proceeding and to know the outcome of any disciplinary proceeding in a timely manner. [¶] (3) The right of the person alleging sexual harassment to complete alternative work assignments outside of class or to be assigned to the same class with a different instructor, should the alleged harasser be an instructor. [¶] (c) On or before March 1, 1994, the Regents of the University of California, the Trustees of the California State University, and the Board of Governors of the California Community Colleges shall report to the Legislature regarding the progress made toward implementing this section. [¶] SEC. 3. Section 12960.5 is added to the Government Code, to read: [¶] 12960.5. It shall be the policy of the Fair Employment and Housing Commission to provide any person who files a complaint with an initial interview within 30 days of the filing of the complaint." (Sen. Bill No. 612 (1993–1994 Reg. Sess.) as introduced Mar. 2, 1993.)

[4] Section 51.7 provided in 1993 when Senate Bill No. 612 was introduced: "(a) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive. [¶] This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing. [¶] (b) As used in this section, 'sexual orientation' means heterosexuality, homosexuality, or bisexuality." (Stats. 1987, ch. 1277, § 1, p. 4544.)

[5] Section 1 of Senate Bill No. 612 as amended May 5, 1993, stated in the definition of "sexual harassment" in proposed section 51.7, subdivision (c): "All persons within the jurisdiction of this state have the right to be free from sexual harassment. For purposes of this subdivision, 'sexual harassment' means conduct which meets the criteria of both paragraphs (1) and (2), as follows: [¶] (1) Conduct constituting 'sexual harassment' is either of the following if it also meets the criteria of paragraph (2): [¶] (A) Unwelcome and persistent or severe sexual advances, solicitations, or other sexual conduct. [¶] (B) A pattern or practice of unwelcome sexual requests or demands for sexual compliance. [¶] (2) Conduct specified in paragraph (1) constitutes 'sexual harassment' if it meets any of the following criteria: [¶] (A) The conduct has the purpose or effect of intimidation, whether or not on a discriminatory basis. [¶] (B) The conduct threatens violence or another substantial or unlawful sanction on a discriminatory basis. [¶] (C) The conduct exploits a fiduciary relationship." The Legislature's factual findings in proposed section 51.7, subdivision (d)(1) stated in part, "The Legislature finds and declares all of the following: [¶] (1) Sexual harassment occurs not only in the workplace, but in public places and in fiduciary or trust-based relationships, including, but not limited to, relationships

1993, § 1.5, as amended Jan. 3, 1994, § 2.) On January 11, 1994, a hearing on Senate Bill No. 612 was held before the upper house Committee on the Judiciary. An analysis prepared for the Judiciary Committee suggested that proposed section 51.7 define "professional service provider" which was referred to in several of the legislation's prior versions. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994, p. 5.) Amended on January 19, 1994, Senate Bill No. 612 added for the first time section 51.9. Section 1 of Senate Bill No. 612, the Legislature's findings, states: "The Legislature finds and declares that sexual harassment occurs not only in the workplace, but in relationships between providers of professional services and their clients." The proposed January 19, 1994 version of section 51.9 stated: "All persons within the jurisdiction of this state have the right to be free from sexual harassment. For purposes of this subdivision, 'sexual harassment' means conduct which meets the criteria of both subdivisions (a) and (b), as follows: [¶] (a) Sexual advances, solicitations, sexual requests, or demands for sexual compliance that are unwelcome and persistent or severe. [¶] (b) The conduct exploits a relationship between a provider of professional services and a client." (Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Jan. 19, 1994.) As can be noted, the January 19, 1994 version of proposed section 51.9, subdivision (b) deleted any reference to the exploitation of a fiduciary relationship. After passage by the upper house, without any greater definition provided as to the types of relationships where liability for sexual harassment could arise, Senate Bill No. 612 was amended in the Assembly on August 9, 1994. As amended, the bill provided, as it does now in section 51.9, subdivision (a)(1)(A) through (F), a nonexclusive listing of relationships where sexual harassment can give rise to civil liability.

There is no merit to defendant's assertion that plaintiff was required to allege the existence of a fiduciary relationship in order to state her section 51.9 claim. There is nothing in the language of section 51.9 that requires a fiduciary relationship exist. The sole authority defendant relies upon for the proposition plaintiff must allege that a fiduciary duty exists is a legislative committee report prepared for a scheduled May 4, 1993 hearing concerning a proposed amendment to section 51.7, which contained fiduciary duty language. It was not until January 19, 1994, that Senate Bill No. 612 was amended to add section 51.9 and that amendment contained no fiduciary duty requirement. Moreover, none of the post-January 19, 1994 legislative committee reports assert section 51.9 requires a fiduciary duty exist between a plaintiff and a defendant. (Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Jan. 19, 1994, pp. 1–2; Assem.

---

between professional service providers and their clients." (Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended May 5, 1993, § 1; see also Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended May 17, 1993, §§ 1, 1.5; Sen. Bill No. 612 as amended Jan. 3, 1994, §§ 1–2.)

Com. on Judiciary, Analysis of Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Jan. 19, 1994, pp. 1–2; Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Aug. 9, 1994, pp. 1–2; Sen. Floor, Bill Analysis of Sen. Bill No. 612 (1993–1994 Reg. Sess.) as amended Aug. 9, 1994, prepared for Sen. 3d reading, pp. 1–2.) The demurrer dismissal may not be upheld because plaintiff failed to allege the existence of a fiduciary relationship.

### 4. Liability of a corporation

■ Defendant argues that because it is a business, as opposed to an individual, it cannot be liable for the sexual abuse of plaintiff. Defendant relies on the language in section 51.9, subdivision (a) which states "[a] person is liable" for sexual harassment. Thus, defendant argues, because it is a corporation, it cannot be liable under the provisions of section 51.9 for sexual abuse. This contention has no merit. Section 14 states in part, "[T]he word person includes a corporation as well as natural person . . . ." (See *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 [3 Cal.Rptr.3d 623, 74 P.3d 726]; *Douglass v. Pacific Mail S.S. Co.* (1854) 4 Cal. 304, 305.) None of the Assembly and Senate committee reports we have discussed previously in this opinion support the conclusion that the Legislature intended to hold a natural person liable for sexual harassment in the context of "business, service, or professional" relationships which often involve corporations. (§ 51.9, subd. (a)(1); see *Hassan v. Mercy American River Hospital, supra*, 31 Cal.4th at pp. 717–718 [no legislative committee reports support the contention that § 43.8 was to apply only to humans].) Thus, a corporation may be civilly liable for violating section 51.9.

■ Typically, a corporation may be liable for employee misconduct under a respondeat superior theory. (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1167 [23 Cal.Rptr.3d 335]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 32, p. 94.) We need not address the respondeat superior issue. Rather, there are sufficient allegations of ratification to withstand a challenge at the demurrer stage: "As an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort. [Citations.] The failure to discharge an employee who has committed misconduct may be evidence of ratification. [Citation.] The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery. [Citations.] Whether an employer has ratified an employee's conduct is generally a factual question. [Citation.]" (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 169–170 [49 Cal.Rptr.3d 153]; see *Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d

1401] ["A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.' "].) A principal may be liable when it ratifies an originally unauthorized tort. (*Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 852 [77 Cal.Rptr.2d 12]; *Shultz Steel Co. v. Hartford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513, 519, 523 [231 Cal.Rptr. 715].) And generally, the ratification relates back to the time the tortious act occurred. (*Rakestraw v. Rodrigues, supra,* 8 Cal.3d at p. 73; *Ballard v. Nye* (1903) 138 Cal. 588, 597 [72 P. 156].) As noted, ratification may occur when an employer learns of misconduct and fails to discharge an agent or employee. (*City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, 782–783, [109 Cal.Rptr. 365]; *Coats v. Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 914 [93 Cal.Rptr. 639].)

■ Principles of ratification apply to a section 51.9 cause of action. The ratification statute, section 2307,[6] was codified in 1872 as part of the adoption of the Civil Code and is a well-established principle of California law. (See Code commrs., note foll., 2 Ann. Civ. Code, § 2307 (1st ed. 1872, Haymond & Burch, commrs. annotators) p. 68); *Blood v. La Serena L. & W. Co.* (1896) 113 Cal. 221, 227 [45 P. 252] ["Ratification under our code is a legal term with a well defined and specific meaning . . . ."]; *Phelan v. San Francisco* (1856) 6 Cal. 531, 540–541 [board of supervisors did not ratify a previously existing contract by the mere act of taking control of a parcel of rental property].) There is no basis for finding that the Legislature intended that traditional ratification principles not apply in the case of section 51.9. It is presumed the Legislature did not intend to repeal long-established common law and statutory ratification rules. ■ Our Supreme Court has explained: "As a general rule, '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." [Citations.]' [Citation.]" ' (*Goodman v. Zimmerman* (1994) 25 Cal.App.4th 1667, 1676 [32 Cal.Rptr.2d 419].) Accordingly, '[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' (*People v. Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509].)" *California Assn. of Health Facilities v. Department*

---

[6] Section 2307 states, "An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification."

*of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323]; see *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 110 [84 Cal.Rptr.3d 734, 194 P.3d 1026] [" 'statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject' "].) Here, nothing in the statutory language or legislative committee reports indicates any intention to abrogate well-established ratification principles, which impose potential liability on a corporation whose employees or agents engage in tortious conduct.

■ Ratification is a permeation of the law of agency. (See *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746] ["An actual agency also may be created by ratification."]; Rest.3d Agency, § 4.01, introductory note, p. 303 ["By ratifying an act, a principal triggers the legal consequences that follow had the act been that of an agent acting with actual authority. Ratification replicates these consequences, but after the fact of the agent's action."].) Agency allegations are subject to general pleading requirements: "It is a generally accepted rule, however, that 'In order to state a cause of action against defendant for a wrong committed by his servant, the ultimate fact necessary to be alleged is that the wrongful act was in legal effect committed by defendant. This may be alleged either by alleging that defendant by his servant committed the act, or, without noticing the servant, by alleging that defendant committed the act.' [Citations]." (*Golceff v. Sugarman* (1950) 36 Cal.2d 152, 154 [222 P.2d 665]; see *Alvarez v. Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 997 [41 Cal.Rptr. 514].)

■ Here, there were sufficient allegations defendant ratified Mr. Gaspar's alleged sexual misconduct. The first amended complaint alleges: Mr. Gasper was an agent and employee of defendant; Mr. Gasper was acting at all times on behalf of defendant; all acts or omissions alleged in the first amended complaint were ratified by defendant; during a two-to-three-year period, several of defendant's "managing agents and supervisors" knew Mr. Gaspar was sexually abusing patients and "refused to take any action"; the managing agents and supervisors "hid" this information so Mr. Gaspar could continue to work for it; while this was occurring, Mr. Gaspar sexually assaulted a female employee and the information was "hid" so he could continue his employment; with knowledge of Mr. Gaspar's sexual misconduct, no disciplinary action was taken and he was allowed to be alone with women who were patients; and defendant intentionally or negligently "spoiled evidence" including destroying documents concerning other sexual assaults in order to conceal them from plaintiff. The foregoing allegations that defendant, with knowledge of Mr. Gaspar's misconduct, continued to employ him and destroyed documents was sufficient to state a claim that it ratified his sexual misconduct. (*Rakestraw v. Rodrigues, supra,* 8 Cal.3d at p. 73; *City of Los Angeles v. Superior Court, supra,* 33 Cal.App.3d at pp. 782–783.) Thus, the demurrer to the section 51.9 cause of action should have been overruled.

D., E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. DISPOSITION

The demurrer dismissal is reversed. Upon remittitur issuance, a new order is to be entered overruling the demurrer and the trial court is to proceed to rule on defendant's motion to strike. Plaintiff, C.R., is to recover her costs incurred on appeal from defendant, Tenet Healthcare Corporation.

Mosk, J., and Kriegler, J., concurred.

A petition for a rehearing was denied February 3, 2009, and the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 1094.