Filed 8/9/16  Pooni v. U.S. Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAJINDER POONI et al., | C078806 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201300135762CUORGDS) |
| v. | |
| U.S. BANK, N.A., | |
| Defendant and Respondent. | |

Appellants Rajinder Pooni and Ravinder Kang appeal from the trial court's judgment of dismissal of their third amended complaint, following an order sustaining respondent U.S. Bank's demurrer without leave to amend.  Appellants' causes of action arising from the alleged wrongful foreclosure of their house, for violation of Civil Code section 2924,[1] fraud, misrepresentation, and quiet title,[2] fail because appellants did not

---

[1] Undesignated statutory references are to the Civil Code in effect at the time of the action.

[2] During oral argument, appellants conceded their quiet title claim is no longer viable. Accordingly, we need not address that portion of their argument.

1

sufficiently allege their ability to pay the amount necessary to reinstate their loan, much less plead or make tender on the full outstanding loan balance.  Appellants' additional cause of action for violation of Business and Professions Code section 17200 (Unfair Competition Law, or UCL) also fails because it relies on the other causes of action to show unfair, unlawful or fraudulent practice by respondent, and because appellants did not sufficiently allege that their injuries occurred as a proximate result of respondent's actions rather than appellants' own failure to make required mortgage payments.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Facts Alleged by Appellants[3]

On or around August 9, 2006, appellants purchased the property at 10936 Haveshill Way, Mather, California 95655 (Property), with financing from Wells Fargo Bank.  On or around January 3, 2008, Wells Fargo Bank transferred its deed of trust and promissory note for the Property to EMC Mortgage, LLC (EMC).  On or around April 14, 2008, EMC foreclosed on the Property.  At the time, appellants were current on their mortgage and there were no notices of default or trustee's sale filed with the Sacramento County Recorder's Office.  EMC rescinded the foreclosure on or around April 30, 2008.

Appellants continued to make timely payments to EMC until May 2009, when they contacted EMC to inquire about a loan modification.  An unnamed person at EMC told appellants if they "went late" on their payments, they would receive a loan modification, and assured them that doing so would not trigger foreclosure proceedings or affect their credit.  Appellants went late on their payments and applied for a modification.  They were placed in a trial modification beginning in June 2009, and

---

[3]  The original complaint is not included in the record on appeal.  The facts immediately below are taken, for the most part, from appellants' third amended complaint.

2

required to make three trial period payments on time pursuant to a trial payment plan to qualify for a final modification. Appellants made all three payments and complied with the TPP's guidelines, but did not receive a final modification. In August 2009, they contacted EMC and were told by an unknown person to continue making payments under the TPP. Appellants continued to do so for the next eleven months.

In August 2010, appellants learned that BSI Financial Services (BSI) had become the servicer of their loan. Appellants contacted BSI and spoke to a representative named Marcia, who told them that BSI would not consider them for a modification unless they stopped making payments under the TPP. Marcia also reassured appellants that BSI would not report their missing payments to credit agencies or initiate foreclosure proceedings if they ceased payments in pursuit of a modification. Appellants ceased making payments on their loan and began reapplying for a modification.

In October 2010, appellants' modification was denied. Appellants immediately began making monthly payments again under their regular loan terms. In June 2011, appellants again contacted BSI to inquire about reapplying for a modification. They spoke with a representative named Valerie, who repeated that they had to go late on their payments to pursue modification and that doing so would not affect their credit or trigger foreclosure proceedings. Once again, appellants ceased payments to apply for a modification.

Between June 2011 and June 2012, various BSI representatives, including John Torrez and Miguel Hernandez, assured appellants that their application was complete and they should receive a final determination shortly.

On or around August 31, 2011, appellants were more than $160,000 in arrears and EMC and BSI recorded a notice of default against the Property. Appellants never received notice of this action, and did not know about it at the time.

In November 2011, EMC assigned its interest to respondent.

3

In December 2011, appellants filed for Chapter 13 bankruptcy. They stated they were $60,000 in arrears on the mortgage. In May 2012, the petition was dismissed because appellants were unable to make payments required by the confirmed plan.

On July 2, 2012, respondent recorded a notice of trustee's sale against the Property without giving appellants notice of either the sale, or that respondent had assumed appellants' loan.

On July 19, 2012, appellants filed their second Chapter 13 bankruptcy petition. On July 23, 2012, the day of the scheduled foreclosure, they filed a motion to extend the bankruptcy stay.

On August 23, 2012, Hernandez told appellants that their modification application was under review, and their home would therefore not be foreclosed. At some point during the first week of September 2012, appellants spoke to Hernandez again and were told to continue waiting for a determination on their application.

On or around September 6, 2012, respondent sold appellants' home at a trustee's sale.

On or around September 25, 2012, appellants requested all documents pertaining to the Property from the Sacramento County Recorder's Office. Subsequently, they filed suit against EMC, BSI, and respondent.

**First Amended Complaint**

On August 16, 2013, appellants filed a first amended complaint (FAC) against BSI, EMC, and respondent for damages and equitable relief. The complaint pled the following causes of action against respondent: breach of contract; violation of section 2924 et seq.; fraud; negligent misrepresentation; violation of the UCL; and quiet title.

BSI demurred. The demurrer was heard on April 7, 2014, overruled in part, and sustained in part with leave to amend. Notably, in sustaining BSI's demurrer to the cause of action under section 2924, the court ruled that appellants failed to allege tender.

4

### Second Amended Complaint

On April 17, 2014, appellants filed a second amended complaint (SAC). The SAC added the following allegation in support of appellants' cause of action under section 2924 against all defendants: "At all times relevant herein, [appellants] were, and remain, ready, willing and able to tender the amount necessary to reinstate their loan, as provided by [section] 2924c, and would have tendered the amount necessary to reinstate their loan, had [appellants] been given notice that the sale would take place."

All three defendants demurred. Both BSI and EMC argued that appellants suffered no prejudice as a result of alleged procedural irregularities in the sale because appellants could not tender the amount needed to reinstate, and thus had no cause of action under section 2924. Respondent argued that appellants did not reasonably rely on any alleged misrepresentations, suffered no prejudice as a result of alleged procedural irregularities in the sale, and failed to tender the amount required to quiet title.

EMC's demurrer was heard on June 13, 2014; the court overruled in part, and sustained in part with leave to amend. In sustaining EMC's demurrer to the cause of action under section 2924, the court did not consider appellants' failure to tender as a basis because it was raised for the first time in EMC's reply papers. However, the court ruled in relevant part that appellants failed to plead with "sufficient factual particularity" that "any of the alleged procedural irregularities resulted in prejudice to [appellants]."

Respondent's demurrer was heard on August 15, 2014; the court overruled in part, and sustained in part with leave to amend. The demurrer was sustained[4] as to the breach of contract cause of action because appellants failed to sufficiently allege: (1) appellants' performance of their loan obligations or excusal thereof; (2) breach of a specific, material term of the loan documents; and (3) compensable damages. The demurrer was sustained

---

[4] Respondent's demurrer to the breach of contract cause of action was overruled as to respondent's statute of limitations and statute of frauds assertions.

5

as to the section 2924 cause of action because, as with EMC, appellants failed to plead with sufficient factual particularity that the alleged procedural irregularities resulted in prejudice to appellants. Similarly, the court sustained respondent's demurrer as to the "essentially identical" fraud and misrepresentation causes of action because appellants failed to plead their allegations with sufficient factual particularity. As to the UCL cause of action, the court found that appellants did not sufficiently plead "any unfair, unlawful or fraudulent business practice" to support their claim against respondent "inasmuch as [respondent's] demurrer to each of the preceding [causes of action] has been sustained (at least in part)." Finally, the court sustained the demurrer as to the quiet title cause of action because appellants: (1) again failed to adequately allege tender; (2) failed to "plead a valid challenge to the completed foreclosure sale since the demurrer to the [section 2924 cause of action] has been sustained"; and (3) failed to file a verified complaint pursuant to Code of Civil Procedure section 761.020.

### Third Amended Complaint

On September 5, 2014, appellants filed their third amended complaint (TAC). The complaint removed respondent as a defendant to the cause of action for breach of contract.

As to the cause of action under section 2924, the TAC repeated that appellants were "willing and able to tender the amount necessary to reinstate their loan," and added that appellants lost their property "because of [respondent]'s failure to give [appellants] notice of the sale." The complaint further stated, "[appellants] hereby unequivocally offer to tender the reinstatement amount that was due on the date of the sale, thereby preserving their right to reinstate." As an alternative to unwinding the sale, the TAC requested "monetary damages based on [respondent]'s statutory violations," contending that "tender is not required to assert a claim for damages" under section 2924.

As to the fraud and misrepresentation causes of action, the TAC made essentially the same allegations as its predecessor but with greater specificity relevant to the fraud

6

claim, e.g., stressing that Hernandez was "an employee of BSI and agent of [respondent] for the purposes of speaking with [appellants]." The TAC did not alter the cause of action under the UCL.

As to the quiet title cause of action, the TAC repeated that appellants "were, and remain, ready, willing and able to tender the amount necessary to reinstate their loan." The complaint also reiterated assertions that "[t]ender of the reinstatement amount is all that is necessary in order to attack a sale based on lack of notice," and that requiring appellants to "tender the entire outstanding balance would completely eviscerate [their] right to reinstate."

All three defendants demurred to the TAC, and all three demurrers were heard on December 24, 2014. BSI's demurrer, which challenged only the breach of covenant of good faith and fair dealing cause of action, was sustained without leave to amend. EMC's demurrer was overruled in part as to the breach of contract and UCL causes of action, and sustained without leave to amend as to all other causes of action.

The court sustained respondent's demurrer without leave to amend. The court also granted respondent's unopposed request for judicial notice of, inter alia, the dockets for the two Chapter 13 bankruptcies filed in December of 2011 and July of 2012, and appellants' motion to value collateral in the 2011 bankruptcy. Although the court did not specifically reference the 2012 bankruptcy in its decision, it did refer to appellants' "financial statements filed in connection with their 2011 bankruptcy proceedings."

As to the cause of action under section 2924, the court ruled that appellants failed to allege facts showing any harm or prejudice resulting from respondent's alleged failure to give notice. Specifically, the court noted that "[a]lthough this [cause of action] alleges [appellants] were and are ready, willing and able to pay the amount needed to reinstate their loan, [appellants'] own financial statements filed in connection with their 2011 bankruptcy proceedings demonstrate that they were actually not ready, willing or able to pay," and "the [TAC] reveals . . . that [appellants'] arrearage was 'insurmountable.' "

7

As to the fraud and misrepresentation causes of action, the court reiterated that although appellants insisted "their failure to take steps to reinstate their loan prior to the foreclosure sale constitutes sufficient reliance," appellants' own financial statements, as discussed above, "reveal they were <u>not</u> capable of making the payments needed to reinstate their loan." Thus, the court ruled that appellants' causes of action lacked "the essential element of reasonable, justifiable reliance on the alleged misrepresentation."

As to the cause of action under the UCL, the court ruled that, although appellants sufficiently alleged injury, they failed to "establish that [their injuries] occurred as a proximate result of [respondent]'s unfair business practices rather than [appellants'] own failure to make the required mortgage payments." Moreover, the court pointed out that this cause of action would also fail because it "explicitly relies on each of the preceding [causes of action]," to which respondent had successfully demurred, "to show some unfair, unlawful or fraudulent practice by [respondent]."

Finally, as to the quiet title cause of action, the court ruled that appellants "failed to tender the full amount owed on the subject loan (not just the amount needed to 'reinstate' the loan)," and that the TAC "lacks any valid challenge to [the] September 2012 foreclosure sale." As previously discussed, appellants had failed to "sufficiently plead any valid [cause of action] against [respondent] much less one which must justify the Court to quiet title in [appellants'] favor." Moreover, the court ruled that "[a]lthough the [TAC] may repeatedly allege that [appellants] were and are ready, willing and able to tender the amount needed to <u>reinstate</u> the loan, this is insufficient especially since the [quiet title cause of action] seeks to title free and clear of all liens." Specifically, the court noted that it was "essential" for appellants to both plead and make tender of "the <u>full outstanding loan balance</u>" in order to attack a completed foreclosure sale.

The court signed an order on January 13, 2015, sustaining respondent's demurrer to appellants' TAC in its entirety. Since appellants had by then had four opportunities to plead a valid cause of action against respondent, the court concluded they had "no

8

reasonable possibility of doing so" and denied leave to amend. The court dismissed the complaint with prejudice and entered judgment in favor of respondent.

## DISCUSSION

We review the legal sufficiency of a complaint de novo, accepting as true all alleged material facts, but not contentions, deductions, or conclusions of fact or law, to determine whether they suffice to constitute a cause of action. (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608 (*Hamilton*), citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We also consider matters which may be judicially noticed. (*Blank*, at p. 318, citing *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

Appellants' TAC pleaded five causes of action against respondent: violation of section 2924; fraud; misrepresentation; violation of the UCL; and quiet title. We address each of these in turn.

### I. Section 2924

### A. The Parties' Contentions

Appellants contend their TAC sufficiently pleaded a cause of action under section 2924 because it alleged that appellants received no notice of trustee's sale, and would have reinstated their loan by August 29, 2012, had they known the Property would be sold. Appellants further contend the trial court erred in finding they were not ready, willing and able to reinstate, on the basis of financial statements filed in connection with their 2011 bankruptcy.

Respondent replies section 2924 does not require actual receipt of notice but merely service thereof, and appellants never clearly alleged that respondent did not mail them notice of the trustee's sale. Respondent also argues appellants had to allege willingness and ability to tender "the *full amount* of their indebtedness, which at the time of the trustee's sale was over $681,000." Appellants, however, only indicated a willingness to pay the amount needed to reinstate their loan.

9

In their reply brief, appellants respond that this cause of action rests not on an alleged failure to mail notice, but on an alleged failure to post the notice of sale on the Property at least 20 days prior to the sale. Appellants also addressed their apparent inability to tender the reinstatement amount by arguing that this court should ignore their July 2012 bankruptcy filings because the trial court did not base its ruling on them. Finally, appellants argue that "where procedural irregularities . . . would render the sale void, such as is the case herein, tender of the entire debt is unnecessary" and the amount to reinstate should suffice.

## B. Analysis

### 1. Request for Judicial Notice

We first address respondent's request for judicial notice and appellants' opposition thereto. Respondent requested that we take judicial notice of documents filed in *In re Rajinder Singh Pooni et al.*, including: (a) appellants' Chapter 13 bankruptcy petition filed July 19, 2012; (b) appellants' Chapter 13 plan filed July 19, 2012; (c) the bankruptcy court's minutes dated August 6, 2012, denying appellants' motion to extend the automatic stay; and (d) the trustee's objection to appellants' Chapter 13 plan and motion to dismiss filed August 29, 2012. (*In re Rajinder Singh Pooni et al.* (Bankr. E.D.Cal. No. 12-33311-A-13J) [petn. dism. Oct. 11, 2012].) We grant the request pursuant to Evidence Code sections 452, subdivision (d), and 459.

Appellants contend that we should not consider the 2012 filings because the trial court did not. Although respondent only requested the trial court to take judicial notice of the docket entries of the 2012 bankruptcy, we grant the request to take judicial notice of the actual filings pursuant to Evidence Code sections 452, subdivision (d), and 459. Evidence Code section 452, subdivision (d), permits judicial notice of records of "any court of record of the United States." (Evid. Code, § 452, subd. (d).) Evidence Code section 459 provides that a "reviewing court may take judicial notice of any matter specified in Section 452." (Evid. Code, § 459, subd. (a).) Thus, while a reviewing court

10

need not take judicial notice of matters not before the trial court, it may nevertheless do so. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [declining to take judicial notice of a matter on appeal, but acknowledging "the reviewing court may take judicial notice of matters not before the trial court"].) And a reviewing court may properly take judicial notice of a party's pleadings and positions as well as established facts from other cases. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 (*Cantu*).)

Here, our taking of judicial notice does not unfairly permit one side to press an issue or theory on appeal that was not raised in the trial court. (Cf. *People v. Sakarias* (2000) 22 Cal.4th 596, 636 [denying request for judicial notice because it would have allowed the defendant to press an issue or theory not raised below]; *People v. Hamilton* (1986) 191 Cal.App.3d Supp. 13, 22 [refusing to take judicial notice of documents not submitted to the magistrate, because "[t]o do so would allow the People to create a new theory which defendant had no opportunity to dispute in the lower court and which the magistrate was not given the opportunity to review"]; see also *People v. Hardy* (1992) 2 Cal.4th 86, 134 [the general rule that reviewing courts will not take judicial notice of matters not before the trial court "prevents the unfairness that would flow from permitting one side to press an issue or theory on appeal that was not raised below"].) And since we are affirming the trial court's decision, our judicial notice of the 2012 bankruptcy pleadings does not result in any unfairness to the trial court. In fact, taking judicial notice is consistent with the trial court's ruling which similarly relied on the 2011 bankruptcy filings. Moreover, appellants were obviously well aware of the 2012 bankruptcy, so the existence of the documents underlying their filing is of no surprise to them. Lastly, as we discuss in more detail *post*, the 2012 bankruptcy filings contain information that is inconsistent with appellants' claim that they were able to tender the amount to reinstate their loan, an inconsistency we decline to ignore.

11

Accordingly, we take judicial notice of the 2012 bankruptcy filings in reviewing the sufficiency of appellants' pleading and also in determining whether it is reasonably possible for appellants to cure the defect in their pleading.[5]

## 2. Notice of Sale

We turn next to the issue of notice. Respondent contends appellants never alleged that "[respondent] did not mail them a copy of the notice of trustee's sale." As appellants point out in their reply brief, however, this assertion misses the allegation on page 14 of the TAC that respondent failed to post notice on the Property at least 20 days before the sale. Section 2924f, subdivision (b)(3), requires that at least 20 days before a trustee's sale, a copy of the notice of sale must be posted "in a conspicuous place on the property to be sold." (§ 2924f, subd. (b)(3).) Respondent's contention that appellants failed to allege a violation of section 2924 based on the failure to give notice is therefore unavailing.

## 3. Prejudice

We agree with respondent and the trial court that appellants failed to show any prejudice resulting from respondent's alleged failure to post notice at the Property. The trial court concluded appellants would have been unable to reinstate with or without the alleged procedural irregularities in the trustee's sale. Specifically, the trial court noted "[appellant]s' default at the time was in excess of $160,000 and even Paragraph 48 of the

---

[5] On appeal, appellants objected to the request for judicial notice solely on the ground that the trial court did not consider the 2012 filings. Appellants did not object on other grounds or separately object to any parts of the filings on any other grounds, e.g., hearsay. Consequently, appellants have forfeited any other objections. (See *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 406, fn. 3 ["failure to timely object to the propriety of judicial notice . . . is deemed a waiver of that objection"].) Even if appellants had objected on hearsay grounds, we could still take judicial notice of their admissions in the filings. (See *North Beverly Park Homeowners Assn. v. Bisno* (2007) 147 Cal.App.4th 762, 778 [judicial notice may be taken of the factual assertions in judicially noticed materials when a hearsay exception applies].)

12

[TAC] characterize[d] the arrearage as 'insurmountable.' " This debt coupled with "[appellant]s' own financial statements filed in connection with their 2011 bankruptcy proceedings" demonstrated to the trial court that appellants were not in fact able to pay the amount needed to reinstate.

The record on appeal, including the documents from appellants' 2012 bankruptcy that we judicially notice, supports the trial court's conclusion. In July of 2012, during the same time frame that a supposed improvement in their finances would have occurred, appellants filed another Chapter 13 bankruptcy. According to appellants' filings in that second bankruptcy, submitted under penalty of perjury, their liabilities at the time exceeded their assets by over $700,000. Appellants had a total of only $320 in cash and savings. One appellant was unemployed. Appellants' combined monthly net income was only $3,500. They admitted owing $65,000 on their mortgage, with monthly payments of $2,300. Appellants' prior bankruptcy was dismissed less than two months prior to the filing of the most recent case at the trustee's request because, among other things, appellants were unable to maintain the payments required by a confirmed plan.

A plaintiff may not plead facts that contradict facts or positions the plaintiff pleaded in other actions, or suppress facts that prove the pleaded facts false. (*Cantu, supra*, 4 Cal.App.4th at p. 877.) When a plaintiff pleads inconsistently in separate actions, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer. (*Ibid*.) Thus, under the doctrine of truthful pleading, we do not close our eyes to situations where a complaint contains allegations contrary to facts that are judicially noticed. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*); *Cantu*, at p. 877.) Indeed, we may disregard false allegations of fact that are contrary to facts judicially noticed. (*Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 490 (*Pich*); *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102 (*C.R.*); *Hoffman*, at p. 400; *Cantu*, at p. 877.) In light of the bankruptcy filings, we see no

13

reason to believe appellants could have tendered the amount necessary to reinstate their loan, whether it was $160,000 or $65,000.

An essential element of an equitable cause of action to set aside a foreclosure sale is that the party attacking the sale was prejudiced or harmed.  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.)  Here, appellants claim the alleged procedural irregularities in the sale deprived them of their right to reinstate and cost them their home.  Appellants cite as support *Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202 (*Anderson*), which, like this case, involved a lawsuit following foreclosure.  Appellants also cite *Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742 (*Lupertino*) for the proposition that a foreclosure sale is invalid if notice was not given to the borrowers until after their right to reinstate expired.

*Anderson* is distinguishable from the present case.  In *Anderson*, the defendant issued the plaintiff a default notice which demanded $14,878.99 to reinstate the plaintiff's loan.  (*Anderson, supra*, 208 Cal.App.3d at p. 216.)  The defendant subsequently asserted the amount to reinstate was $33,372.39 and then later claimed it was $40,000.  (*Ibid.*)  The defendant could not justify these latter demands, and the plaintiff tendered $25,000 to reinstate.  (*Id.* at pp. 215-216.)  The court in *Anderson* found "[t]he adequacy of the tender is dependent upon an accurate calculation of the amounts due," and "[i]f the tender falls short in a sum attributable to the failure of the [defendant] to carry its burden of providing the [plaintiff] with accurate information, the [plaintiff] is entitled to prevail."  (*Id.* at pp. 215, 217.)  Here, appellants do not allege that respondent provided an inadequate or inaccurate calculation of the amount needed to reinstate, thereby interfering with the adequacy of appellants' tender.  In fact, appellants did not make any tender, nor is it apparent from their multiple complaints how they could have done so given their debts.  *Anderson* thus provides no support for appellants' attempt to set aside the sale in this case.

14

*Lupertino* is likewise distinguishable from this case. In *Lupertino*, the plaintiff borrowers moved without filing a request for notice of change of address pursuant to section 2924b. (*Lupertino, supra*, 35 Cal.App.3d at p. 745.) The defendants sent notice of default to the plaintiffs' new address, and the plaintiffs duly cured the default. (*Ibid.*) When the plaintiffs later defaulted again, however, the defendants mailed notice of default and election to sell to the plaintiffs' *previous* address; the plaintiffs never learned of the sale until after their right to reinstate had expired. (*Id.* at pp. 745-746.) The court concluded that "the conduct of the defendants . . . on the occasion of the first default actually *misled* the plaintiffs to their prejudice with respect to the second default," (*id.* at p. 750, italics added) and held that "after a *trustee* communicates with the trustor at a given address, leading the trustor to believe that his address is recognized as the receiving point of communication, the trustee cannot later refuse or fail to recognize that address." (*Id.* at p. 749, italics added.) *Lupertino*, unlike this case, presented no issue as to whether the borrowers would be capable of making tender even if notice had been given. It thus provides no guidance on the question of whether appellants' inability to tender in this case precludes them from claiming actual prejudice or harm as a result of respondent's alleged failure to give notice.

Appellants repeatedly assert that they had a right to reinstate. However, if appellants failed -- or were unable -- to effectively exercise that right, the sale is valid and proper in every respect as "a final adjudication of appellant[s'] and respondent['s] rights as borrower and lender, respectively." (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 121.) We must therefore determine if appellants alleged, or could have alleged through amendment, tender of the amount necessary to reinstate their loan.

**4. Appellants' Ability to Reinstate Their Loan**

Appellants complain the trial court incorrectly determined they could not make tender. Specifically, they argue, first, that a Chapter 13 bankruptcy does not by itself

15

establish an inability to reinstate; and second, that a bankruptcy filed in 2011 does not indicate inability to reinstate in 2012.

The trial court cited multiple factors affecting its decision. Appellants' default at the time of the foreclosure was in excess of $160,000, an amount they themselves characterized as "insurmountable." Moreover, appellants' financial statements filed in connection with their 2011 bankruptcy admitted "pre-petition arrears" of $60,000. The trial court considered these substantive factors, "[c]oupled with the fact the [TAC] reveals" appellants "voluntarily chose to stop making payments," in finding that appellants suffered no prejudice as a result of respondent's alleged failure to post notice of the sale.

Appellants attempt to downplay the significance of the 2011 bankruptcy filings by characterizing them as merely "a snapshot of [a]ppellants' financial picture as of December 2011." Appellants contend "[t]hese documents, in no way, reflect any changes to [a]ppellants' income or pertain to [a]ppellants' financial picture in August 2012." Appellants, however, pleaded no changes to their finances between December 2011 and August 2012, much less changes sufficient to overcome evidence of what they had characterized as "insurmountable" debts. In answering respondent's claim that appellants could not make tender, appellants "repeatedly" alleged, with no supporting facts, that they "were, and remain, ready, willing and able to tender," apparently leaving it up to the trial court to guess how to reconcile this ambiguous claim with both respondent's evidence and appellants' bankruptcy admissions to the contrary. The trial court does not, however, need to make assumptions or guesses as to material facts on appellants' behalf, and it did not err in resolving ambiguities in appellants' pleading against them. (See, e.g., *Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537 ["in pleading, the essential facts upon which a determination of the controversy depends should be stated with clearness and precision so that nothing is left to surmise"], citing *Philbrook v. Randall* (1924) 195 Cal. 95, 103; *Del Cerro Mobile Estates v. City of Placentia* (2011)

16

197 Cal.App.4th 173, 181 [trial court was required to give effect to a statutory exemption upon demurrer if no facts in the plaintiff's complaint suggested a scenario in which the exemption did not apply].)

Appellants also argue in their reply brief that pleading "a clear and unambiguous willingness and ability to tender the reinstatement amount due at the time of the sale" should suffice to state a cause of action. Their pleading, however, was nothing more than a bald assertion regarding their ability to make tender. As discussed *ante*, it was unsupported by any factual allegations, e.g., of changed financial circumstances or other monetary means, and it was contradicted by overwhelming evidence to the contrary from appellants' two bankruptcies. As also noted above, in reviewing the legal sufficiency of a complaint we do not accept as true mere conclusions of fact. (*Hamilton, supra*, 195 Cal.App.4th at p. 1608.) And since a reviewing court may disregard allegations of fact in a complaint that are contrary to facts judicially noticed (*Pich, supra,* 221 Cal.App.4th at p. 490; *C.R., supra*, 169 Cal.App.4th at p. 1102; *Hoffman, supra*, 179 Cal.App.4th at p. 400; *Cantu, supra*, 4 Cal.App.4th at p. 877), it was incumbent upon appellants to state with specificity how it was possible they could make the tender. Appellants' bald assertion that they could make tender, with no explanation of how, does not suffice to state a valid cause of action.

Appellants' assertion that they should have been given leave to amend yet again is addressed *post*.

### 5. The Amount of Tender Required to Challenge the Sale

We turn last to appellants' contention in their reply brief that "because the procedural irregularities in the sales process eviscerated [a]ppellants' right to reinstate their loan, tender of the *entire indebtedness* is not required to maintain a cause of action." (Italics added.) As a preliminary matter, we need not address arguments raised for the first time in a reply brief. (See, e.g., *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 (*Reichardt*).) Even if we considered this argument, it is meritless. To bring an

17

action to set aside a trustee's sale for irregularities in sale notice or procedure, appellants had to offer to pay the full amount of the debt secured by the Property. (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 ["It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."].) This rule is premised upon the equitable maxim that a court of equity will not order a useless act performed. (*Id.* at pp. 578-579.) To maintain a cause of action for irregularities in sale procedure, appellants had to allege tender of the total amount of their indebtedness. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.)

Appellants cite *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 (*Dimock*) and *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047 (*Intengan*) for the proposition that "where procedural irregularities exist in the sale process that would render the sale void . . . tender of the entire debt is unnecessary." Neither *Dimock* nor *Intengan* supports appellants' position.

In *Dimock*, after a "valid and bona fide substitution" of the trustee, the property at issue was conveyed in a foreclosure sale, not by the new trustee, but by the former trustee. (*Dimock, supra*, 81 Cal.App.4th at p. 874.) The court found the former trustee "had no power to convey [the] property," and the sale was therefore "void as opposed to merely voidable," i.e., "a complete nullity with no force or effect as opposed to one which may be set aside but only through the intervention of equity." (*Id.* at p. 876.) "Accordingly, in attacking the [sale] Dimock was not required to rely upon equity in setting aside a merely voidable deed. [Citation.] Rather, he could rely on the face of the record to show that the [sale] was void." (*Id.* at p. 878.) In contrast, appellants in this case do not claim the sale was *void* for any irregularity comparable to the one in *Dimock*; rather, they seek to overcome a *voidable* sale on equitable grounds. (See *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1359 ["there has been a notice defect and conclusive presumption language in the deed, courts have characterized the sales as

18

'voidable' "]; *Dimock*, at p. 877 ["In such instances a trustor then bears the burden of showing that there are grounds for equitable relief from the deed, *such as fraud or that the buyer was not a bona fide purchaser for value, and that there were also defects in notice*." ], italics added.) *Dimock* explicitly recognizes what we note *ante* -- a debtor attempting to overcome a *voidable* sale on equitable grounds "must tender any amounts due under the deed of trust." (*Dimock*, at pp. 877-888.)

Intengan is similarly unhelpful to appellants' argument. In *Intengan*, the appellant, citing *Dimock*, argued that tender was not required because the foreclosure sale at issue was *void*, not merely *voidable*. (*Intengan, supra*, 214 Cal.App.4th at p. 1053.) As discussed above, appellants here do not make any such argument, so *Intengan* would not be helpful to appellants even if the appellant in that case had prevailed on her theory. The court in *Intengan*, however, did not reach the void-or-voidable issue, but instead held that an allegation of tender was unnecessary because "no foreclosure sale had occurred as of the time of the ruling on the demurrer. While the tender requirement may apply to causes of action to *set aside* a foreclosure sale, a number of California and federal courts have held or suggested that it does not apply to actions seeking to *enjoin* a foreclosure sale." (*Id.* at pp. 1053-1054.) Here, however, appellants do not seek to enjoin a pending foreclosure sale, but rather to set aside a completed sale; the requirement to tender the total amount owed thus applies squarely to them. In fact, the court in *Intengan* also explicitly noted that, "[a]s a general rule, a plaintiff may not challenge the propriety of a foreclosure sale on his or her property without offering to repay what he or she borrowed against the property." (*Id.* at p. 1053.) The court in *Intengan* also specifically pointed out that the appellant's third amended complaint in that case, which alleged "her willingness 'to tender the appropriate and reasonable mortgage payments,' . . . [was] plainly insufficient. A valid tender of performance must be of *the full debt*, in good faith, unconditional, and *with the ability to perform*." (*Ibid.*, italics added.)

19

Like in *Intengan*, appellants' TAC here is insufficient because they failed to allege tender of the *full debt* and their ability to perform. (See 4 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 13:239, p. 964 ["[If] there is no right to cure the default, or if the period of reinstatement has expired, any person who has an interest in the property still has the right to redeem and preclude a foreclosure sale by paying all sums due by the terms of the secured obligation."].) The right to reinstate allows a debtor to reinstate their loan according to its original terms by paying the amount in default. (§ 2924c, subds. (a)(1), (e).) And as appellants acknowledge, the right to reinstate expires five days prior to the date of a foreclosure sale. (Civ. Code, § 2924c, subd. (e).) Appellants cannot now assert the right and make an offer to reinstate, after the sale is complete. The right to redeem, on the other hand, allows a debtor to extinguish the lien on their property by making full payment of all sums due under the terms of the secured obligation. (§§ 2903-2905.) The requirements to exercise each right are proportional to the value of the relief secured, and are not interchangeable. (See 5 Miller & Starr, *supra*, § 13:230 at p. 13-922 ["A tender of the entire amount owing to the beneficiary . . . is called a redemption . . . however, this does not 'reinstate' the loan but rather pays the debt in full and requires a release of the deed of trust or mortgage." In contrast, a "reinstatement," on "tender of the amount required for a cure of the default," reinstates the obligation "according to the original terms as if no default had occurred."], fn. omitted.)

Appellants are correct that section 2924c "nullifie[s] a bank's ability to demand an accelerated amount of the loan as a condition of reinstatement by limiting the amounts a lender can demand as a condition of reinstatement." This indicates legislative intent to ensure that a debtor needs to pay only the amount in default to cure a default. (See § 2924c, subd. (a)(1).) But appellants have shown no statute or legislative intent that would allow a debtor to pay only the amount in default to extinguish all liens on their property and set aside a completed sale. To interpret section 2924c as appellants suggest would permit them to meet only the lower requirements of reinstatement but enjoy the

20

more valuable relief of redemption. Such an outcome would be both inequitable and contrary to statutory mandate. (See §§ 2903-2905, 2924c.) Appellants did not offer to tender the full amount of their indebtedness. Thus, even if appellants had shown their ability to tender the amount necessary to reinstate their loan, such amount would have been insufficient to set aside the sale.

## II. Fraud and Misrepresentation

### A. The Parties' Contentions

Appellants focus on the element of reliance, cross-applying their argument under section 2924 that the trial court erred in finding appellants were unable to reinstate their loan. Respondent replies that even if appellants' 2011 bankruptcy alone did not evidence their inability to reinstate, appellants' second bankruptcy in July of 2012 certainly demonstrated that appellants "had 'an insurmountable amount of arrears' " and could not have reinstated. Because appellants could not have reinstated, they "could not have, and did not, in fact, rely on any representation in not doing so."

### B. Analysis

The elements of negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made without reasonable ground for believing it to be true; (3) made with the intent to induce another's reliance; (4) justifiable reliance; and (5) resulting damage. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.) Fraud further requires scienter, or "knowledge of falsity," and "intent to defraud." (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173-174 (*Small*).) Fraud must be pled specifically and with factual particularity; general and conclusory allegations do not suffice. (*Id.* at p. 184.)

As the trial court noted, appellants' essentially identical causes of action for misrepresentation and fraud are both based on the same factual allegations -- that they relied on the alleged misrepresentations of Hernandez, respondent's agent, in forbearing from reinstating their loan. Appellants' claim of reliance suggests they would have

21

reinstated but for Hernandez's alleged misrepresentations. The trial court, however, determined that appellants were not in fact capable of reinstating, and thus did not actually rely on respondent's alleged misrepresentations. In doing so, the trial court reiterated its findings regarding the section 2924 cause of action as to appellants' financial situation and means. We agree with the trial court that appellants failed to plead with sufficient particularity the essential element of reliance.

To assert fraud or misrepresentation, appellants must " ' " ' "establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom.' " ' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1499.) "This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages." (*Ibid.*) Here, appellants allege respondent misrepresented to them that there would be no foreclosure during loan modification review. They further allege they relied on this misrepresentation by not reinstating their loan, "which they would have done but for [r]espondent's misrepresentations." Appellants' sole allegation of reliance thus depends on their ability to actually reinstate their loan prior to the sale. However, as discussed *ante*, appellants have shown no such ability to reinstate.

*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411 (*Granadino*), a recent case involving a summary judgment motion, is illustrative here. In support of a promissory estoppel claim, the plaintiffs alleged the defendant bank assured them they were " 'under active review for a modification and, therefore, there no longer was a trustee [sale] date scheduled.' " (*Id.* at p. 417.) The plaintiffs argued that had they known of the subsequent foreclosure sale date, they would have reinstated their loan. (*Ibid.*) However, the plaintiffs in *Granadino* failed to establish a triable issue of fact on the element of reliance because they "presented no evidence to support [the] position" that they could have reinstated. (*Ibid.*) They would have needed $75,340.70 to cure their

default prior to the sale, but had access to only $66,605 at the time. (*Ibid.*) In the instant case, as of July 2012, the second bankruptcy filings, of which we have taken judicial notice, showed appellants had access to only $320; their monthly payment on their mortgage alone was $2,300. Thus, the evidence of appellants' financial situation shows that, like the appellants in *Granadino*, appellants here could not have reinstated their loan even without respondent's alleged misrepresentations. Therefore, without specifically alleging how they could have reinstated before the foreclosure, appellants failed to plead the essential element of reliance in their TAC.[6]

### III.    Business and Professions Code Section 17200

### A.  The Parties' Contentions

Appellants claim their TAC sufficiently pleaded causes of action for violation of section 2924, misrepresentation, and fraud. Therefore, appellants claim their derivative cause of action under the UCL should also have survived demurrer.

Respondent argues, first, that appellants forfeited this argument by not raising it in their opening brief. Respondent also contends that since the UCL cause of action is derivative, it must fail because appellants did not sufficiently plead their predicate causes of action.

### B.  Analysis

In arguing that appellants forfeited this argument, respondent appears to have overlooked the argument on page 29 of appellants' opening brief. Regardless, both parties agree that appellants' cause of action under the UCL is derivative of appellants' causes of action for violation of section 2924, fraud, and misrepresentation. It therefore cannot survive demurrer if its predicate causes of action do not. (*Aleksick v. 7-Eleven,*

---

[6] In light of our conclusion regarding the reliance element, we need not address the contentions of the parties regarding the damages element of appellants' misrepresentation and fraud claim.

23

*Inc.* (2012) 205 Cal.App.4th 1176, 1185 [Bus. & Prof. Code, § 17200 proscribes " 'any unlawful' " business practice, thereby borrowing and making independently actionable violations of other laws; when predicate claims fail, a derivative UCL claim also fails].) As discussed *ante*, the trial court did not err in sustaining respondent's demurrer to appellants' predicate causes of action; appellants' derivative UCL cause of action therefore necessarily fails.[7]

### IV.    Denial of Leave to Amend

Appellants also argue that they "should have been given leave to amend to plead what means they had to reinstate . . . and/or any changes to their financial circumstances." Appellants bear the burden of showing a reasonable possibility that their complaint can be amended to state a cause of action. (*Hamilton, supra*, 195 Cal.App.4th at p. 1609, citing *Blank, supra*, 39 Cal.3d at p. 318.) If there is a reasonable possibility that the defects in the complaint can be cured by amendment, then the trial court abused its discretion and we reverse; if not, we must affirm. (*Ibid*.) We agree with respondent that the trial court did not abuse its discretion in denying leave to amend, for several reasons.

First, though appellants seek to plead changes to their financial circumstances, any such changes would ostensibly need to have happened before August of 2012 to affect appellants' ability to challenge the foreclosure sale. Appellants filed their FAC a full year later, in August of 2013. They filed their third and final amended complaint over a year after that, in September of 2014. In any of their four complaints, appellants could have pleaded changes to their financial circumstances, yet failed to do so. Moreover, as discussed above, all three of defendants' demurrers repeatedly pointed out the

---

[7] We need not address respondent's contentions that the UCL claim is defective for the additional reason that the statute only allows injunctive relief or restitution and that neither is available to appellants.

deficiencies in appellants' complaints, yet appellants' amendments continuously failed to cure these deficiencies. Under these circumstances, the trial court did not abuse its discretion in concluding that, after having already had "four opportunities to plead a valid [cause of action] against [respondent]," appellants had "no reasonable possibility" of doing so through yet another amendment. (See, e.g., *Wilson v. Loew's Inc.* (1956) 142 Cal.App.2d 183, 196.)

Second, even after multiple sustained demurrers and amendments, on appeal appellants still fail to show how they could amend their complaint to plead a valid cause of action against respondent. (See *Trustees of Capital Wholesale Electric etc. Fund v. Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 622 [appellants bear the burden of "showing in what manner [they] can amend [their] complaint and how that amendment will change the legal effect of [their] pleading"].) In their opposition to respondent's demurrer to the TAC, appellants stated repeatedly that they must be given leave to amend any insufficient pleadings, but did not explain how another amendment could salvage the legal sufficiency of the TAC if previous amendments did not. Even appellants' briefs on appeal merely assert, without explanation, that they "could have cured any deficiencies through amendment" to "address exactly how they would have obtained monies to reinstate their loan in August 2012."

Moreover, the record on appeal gives us no reason to believe appellants could have tendered the amount required to reinstate their loan, much less the full amount of their debt. Their financial situation in 2012 precluded necessary conditions of their causes of action against respondent. Even if appellants had had another opportunity to allege significant improvements in their financial circumstances in the trial court, they could not have done so.

Finally, appellants in their reply brief suggest for the first time that, despite their financial struggles, they had "other means of obtaining monies to reinstate the loan, such as through a loan from [a]ppellants' business . . . loans from [a]ppellants' family or

25

friends, or through any other means."[8]  First, as previously noted, we need not address arguments raised for the first time in a reply brief.  (See, e.g., *Reichardt, supra*, 52 Cal.App.4th at p. 764.)  But even if we were to consider these assertions, they are vague and nebulous.  Appellants seem to suggest their claim of such possibilities as a loan from family or friends or "other means" undermines, perhaps even cancels out, the significance of their bankruptcy filings.  But as discussed above, it was not up to the trial court to surmise that possible countervailing factors might mitigate the significance of the bankruptcy proceedings.  If appellants had a change in circumstance, or other monetary means available to them, they should have specifically pleaded that change in circumstance or identified with specificity the source of such funds.

Appellants' nonspecific suggestion that they could have obtained a loan from family, friends, or "other means" is essentially speculation; as such, a new pleading stating as much would still be insufficient.  (See *Granadino, supra*, 236 Cal.App.4th at pp. 417-418 [the appellants' statement that they would have " 'explore[d]' the 'possibility' " of a loan from "other banks, friends, relatives, that sort of thing" could not defeat summary judgment because it relied on " 'speculation, conjecture, imagination, or guesswork' "].)

Before we could conclude on appeal that there is a reasonable probability that appellants could amend their complaint to show how they could have tendered the required amount, appellants needed to show us with specificity how they intended to do so in August of 2012.  (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95 [to satisfy their burden, the plaintiff must "clearly and specifically" state the factual

_____

[8]  During oral argument, appellants' counsel contended for the first time that appellants could have borrowed money from a brother.  We note that this purported fact was never pleaded in appellants' successive amended complaints or even raised in their appellate briefs.  Instead, in their reply brief, appellants referenced only a vague possibility of obtaining a loan through appellants' business, family, friends, or some other means.

26

allegations that sufficiently state all required elements of that cause of action], disapproved on another ground in *Ramos v. Brenntag Specialties, Inc.* (2016) 63 Cal.4th 500.) Despite appellants' assertion on appeal that they could have amended their complaint in the trial court to show "*exactly* how they would have obtained monies to reinstate their loan in August 2012, which would have saved all of [a]ppellants' causes of action," they did not show us what amendments could be made. (Italics added.) Accordingly, this litigation as it relates to respondent must come to an end. Given appellants' consistent failure to plead a valid cause of action despite four opportunities to do so, the trial court did not abuse its discretion in denying leave to amend. (See, e.g., *Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1133 [affirming the trial court's dismissal of a complaint without leave to amend where the appellant sought leave to amend, but failed to actually offer to allege facts which would establish a cause of action].)

## DISPOSITION

The judgment is affirmed. Appellants shall pay respondent's costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1), (5).)


                                   MURRAY       , Acting P. J.

We concur:


      DUARTE     , J.


      RENNER     , J.