Filed 6/23/16

# IN THE SUPREME COURT OF CALIFORNIA

FLAVIO RAMOS et al., )
)
      Plaintiffs and Appellants, )
)       S218176
      v. )
)       Ct.App. 2/4 B248038
BRENNTAG SPECIALTIES, INC., et al., )
)       Los Angeles County
      Defendants and Respondents. )       Super. Ct. No. BC449958
_____ )

      In this case, a metal foundry worker who developed interstitial pulmonary fibrosis brought this action (along with his wife) against a variety of companies that supplied products for use in the foundry's manufacturing process, asserting that the suppliers' products, when used in their intended fashion, produced harmful fumes and dust that were a substantial cause of his pulmonary illness. Defendant suppliers demurred, relying upon the then-recent Court of Appeal decision in *Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81 (*Maxton*). In *Maxton*, the appellate court held that under the so-called component parts doctrine set forth in the Court of Appeal decision in *Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 838-839 (*Artiglio*), a supplier of materials was not liable for injuries suffered under circumstances very similar to those involved in the present case. In reliance upon *Maxton,* the trial court sustained defendants' demurrer without leave to amend.

1

On appeal, the Court of Appeal in the present case explicitly disagreed with the analysis and conclusion in *Maxton*, *supra*, 203 Cal.App.4th 81, and held that the component parts doctrine set forth in *Artiglio* is not applicable here because the injury in this case had not been caused by a finished product into which the supplied product had been incorporated but instead by the supplied product itself when used in an intended fashion. We granted review to resolve the direct conflict between the Court of Appeal decision in this case and the Court of Appeal decision in *Maxton*.

For the reasons set forth below, we conclude that the Court of Appeal decision in this case should be affirmed. As the Court of Appeal explained, the protection afforded to defendants by the component parts doctrine does not apply when the product supplied has not been incorporated into a different finished or end product but instead, as here, itself allegedly causes injury when used in the manner intended by the product supplier. Because the trial court sustained defendants' demurrer solely on the basis of the component parts doctrine, the Court of Appeal properly concluded that the trial court's dismissal of plaintiffs' action cannot be upheld.

Although the component parts doctrine is not applicable in this case, it is important to recognize that many issues in this litigation remain unresolved. Under the facts alleged in the complaint, a supplier is liable under the product liability causes of action only if plaintiffs establish either (1) that the supplied product was defective under a design defect theory and that the defect caused the injury or (2) that the supplier should be held responsible for the injury under a duty to warn theory. Each of those distinct legal issues (and the factual questions embodied within those issues) remain undecided at the current early stage of the present litigation. Accordingly, our affirmance of the Court of Appeal decision means that the case will be remanded to the trial court for further proceedings.

## I. Facts and Proceedings Below

From 1972 to 1978 and from 1981 to 2009, plaintiff Flavio Ramos (Ramos) worked as a mold maker, machine operator and laborer for Supreme Castings & Pattern Co., Inc. (Supreme Castings), a company that manufactured metal parts through a foundry and fabrication process.  (From 1979 to 1980, Ramos performed similar work for a different metal parts manufacturer.)  The second amended complaint alleged that while employed by Supreme Castings, Ramos worked "with and around" metals, plaster, and minerals supplied to Supreme Castings by the various companies named as defendants in this action.  One group of defendants (metal suppliers) supplied metal products that were melted in furnaces to form metal castings.[1]  Another group of defendants (mold material suppliers) supplied plaster, sand, limestone and marble that were used to create molds for the casting process.[2]  According to the second amended complaint, all defendants were aware of and intended that their materials would be used by Supreme Castings in the manner in which the materials were actually used.  The complaint further alleged that Ramos developed interstitial pulmonary fibrosis as the result of his exposure to, among other factors, fumes from the molten metal and dust from the plaster, sand, limestone, and marble.  The complaint sought recovery

---

[1]    The named metal supplier defendants are:  Alcoa Inc., Schorr Metals Inc., Southwire Company, Century Kentucky, Inc., and TST, Inc.

[2]    The named mold material supplier defendants are:  United States Gypsum Company (plaster), Westside Building Material Corporation (plaster), Porter Warner Industries, LLC (plaster and zircon sand), P-G Industries, Inc. (plaster and zircon sand), The Pryor Giggey Co. (plaster and zircon sand), J.R. Simplot Company (silica sand), Laguna Clay Co. (limestone), Scott Sales Co. (limestone), Brenntag Specialties, Inc. (limestone), and Resource Building Materials (limestone and marble).

from defendants based on a variety of theories:  (1) negligence, (2) negligence per se, (3) strict liability based on a failure to warn, (4) strict liability based on design defect, (5) fraudulent concealment, (6) breach of implied warranties, and (7) loss of consortium.

After the second amended complaint was filed, defendants sought judgment on the pleadings, relying upon the then-recently decided Court of Appeal decision in *Maxton*, *supra*, 203 Cal.App.4th 81.  The complaint in *Maxton* alleged that the plaintiff in that case " 'worked with and around' " metal products that were cut, ground, sandblasted, welded and brazed during his employer's manufacturing process, and that allegedly as a result the plaintiff developed interstitial pulmonary fibrosis due to his exposure to metallic fumes and dust from the products.  (*Id*. at p. 86.)  The plaintiff in *Maxton* sought recovery from the suppliers of the products on the ground that the suppliers had provided a defective product and had failed to disclose the hazards of their products to plaintiff.  The defendants in *Maxton* filed demurrers and a motion for judgment on the pleadings, maintaining the plaintiff's claims were precluded by virtue of the component parts doctrine discussed in the prior Court of Appeal decision in *Artiglio*, *supra*, 61 Cal.App.4th at pages 835-839.  The trial court in *Maxton* agreed with defendants, and dismissed the complaint without leave to amend.  On appeal, the Court of Appeal in *Maxton* upheld the trial court's ruling, concluding that under the component parts doctrine, as set forth in *Artiglio*, the suppliers could not be held liable for any alleged injury to the plaintiff employee arising from the use of their products during the manufacturing process.  (*Maxton*, *supra*, 203 Cal.App.4th at pp. 88-95 & fn. 3.)

In the present case, the trial court, in reliance upon *Maxton*, *supra*, 203 Cal.App.4th 81, granted defendants' motion for judgment on the pleadings with regard to the second amended complaint with leave to amend, advising plaintiffs that to state causes of action they must "plead around . . . *Artiglio*" as interpreted

4

in *Maxton*. Plaintiffs filed a third amended complaint, to which the trial court sustained defendants' demurrers with leave to amend. After plaintiffs filed a fourth amended complaint, defendants again demurred on the basis of *Maxton* and this time the trial court sustained defendants' demurrers without leave to amend and entered a judgment of dismissal in favor of all defendants.

On appeal, the Court of Appeal in the present case expressly disagreed with the *Maxton* decision and held that the component parts doctrine does not apply to the factual situation at issue in this case. As described by the Court of Appeal, under the component parts doctrine "suppliers of component parts or raw materials integrated into an 'end product' are ordinarily not liable for defects in the end product, provided that their own parts or materials were nondefective, and they did not exercise control over the end product." The Court of Appeal concluded that the component parts doctrine is not applicable here because the complaint alleges "that Ramos suffered injuries not from a defective 'integrated product' that incorporated [defendants'] products, but from those products themselves, which he used as [defendants] intended in the course of [Supreme Castings'] manufacturing process." Accordingly, the Court of Appeal concluded that the trial court judgment dismissing plaintiffs' action should be reversed.[3]

As noted, we granted review to resolve the direct conflict between *Maxton*, *supra*, 203 Cal.App.4th 81, and the Court of Appeal decision in this case.

---

[3]    The Court of Appeal found that with respect to one of the theories set forth in the complaint — the negligence per se claim — the facts set forth in the complaint did not state a cause of action independent of the general negligence claim and that the demurrers were properly sustained as to the negligence per se claim. Plaintiffs did not seek review of that issue in this court and thus that issue is not before us.

5

**II. When a Supplier Provides a Product to an Employer for Use in the Employer's Manufacturing Process, Does the Component Parts Doctrine Relieve the Supplier of Liability if an Employee Is Directly Injured by the Supplied Product Itself When Using the Product as the Supplier Intended?**

In *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167 (*Webb*), our court very recently had occasion to consider a products liability issue related to, but distinct from, the issue presented in this case. *Webb* involved the potential liability of a company — Special Electric — that supplied a particularly dangerous form of raw asbestos to Johns-Manville Corporation for incorporation into finished products manufactured and sold by Johns-Manville for use by consumers or other end users. In *Webb*, we noted that California law recognizes three types of product defects for which a product supplier may be liable: manufacturing defects, design defects, and warning defects. (*Id*., at pp. 180-181.) Because of the posture in which the *Webb* case reached our court, however, we confined our discussion and analysis to the supplier's potential liability under the warning defect prong. (*Id.* at p. 181.)

The duty to warn issue in *Webb* arose in a setting in which the supplier had itself provided a dangerous raw material to the manufacturer and, although the raw material had been incorporated into a finished product, the end user of the finished product had allegedly been injured *by the dangerous raw material that the supplier had itself provided*. In analyzing the duty to warn issue, we recognized that the supplier's potential liability for failure to warn in the *Webb* setting, in which the plaintiff's injury was allegedly caused by the raw material in the finished product that the supplier had itself supplied, was distinguishable from a supplier's potential liability in a case that falls within the component parts doctrine as set forth in prior California decisions such as *Artiglio*, *supra*, 61 Cal.App.4th 830.

6

In *Webb*, we explained that the component parts doctrine — as set forth in *Artiglio* and numerous other California decisions (see, e.g., *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 355; *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 479-481; *Johnson v. United States Steel Corp.* (2015) 240 Cal.App.4th 22, 33-34; *Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1550) and as accurately reflected in section 5 of the Restatement Third of Torts, Products Liability — applies (1) when a supplier provides a component or raw material that is not itself defective (by virtue of a manufacturing, design, or warning defect), (2) the component or raw material is changed or transformed when incorporated through the manufacturing process into a different finished or end product, and (3) an end user of the finished product is allegedly injured by a defect in the finished product. (See Rest.3d Torts, Products Liability, § 5, coms. a, b, and c, pp. 130-134.) Under such circumstances, the component parts doctrine provides protection to the supplier of the component or raw material, subjecting that entity to liability for harm caused by a product into which the component has been integrated only if the supplier "(1) . . . substantially participates in the integration of the component into the design of the product; and [¶] (2) the integration of the component causes the product to be defective . . . ; and [¶] (3) the defect in the product causes the harm." (Rest.3d Torts, Products Liability, § 5(b);[4] see *Webb*, *supra*, pp. 183-185.)

---

[4]     Section 5 of the Restatement Third of Torts, Products Liability — entitled Liability of Commercial Seller or Distributor of Product Components for Harm Caused by Products Into Which Components Are Integrated — provides in full:

"One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:

"(a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or

*(footnote continued on next page)*

7

In setting forth the rationale for the component parts doctrine, comment a to section 5 of the Restatement Third of Torts, Products Liability, explains: "If the component is not itself defective, it would be unjust and inefficient to impose liability solely on the ground that the manufacturer of the integrated product utilizes the component in a manner that renders the integrated product defective. Imposing liability would require the component seller to scrutinize another's product which the component seller has no role in developing. This would require the component seller to develop sufficient sophistication to review the decisions of the business entity that is already charged with responsibility for the integrated product." (Rest.3d Torts, Products Liability, § 5, com. a, p. 131.)

In light of the scope and rationale of the component parts doctrine as set forth in prior California decisions and section 5 of the Restatement Third Torts, Products Liability, we conclude that the Court of Appeal correctly determined that, contrary to the decision in *Maxton*, *supra*, 203 Cal.App.4th 81, the component parts doctrine is not applicable to the factual setting alleged in plaintiffs' complaint in this case. Here, Ramos's injury was not caused by a finished product into which the materials supplied by defendants had been transformed and integrated, and thus the explanation and considerations set forth in comment a to section 5 of the Restatement Third of Torts are not applicable. Instead, the injury was allegedly caused directly by the materials themselves when used in a manner intended by the suppliers. According to the allegations of the

---

*(footnote continued from previous page)*

"(b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and
(2) the integration of the component causes the product to be defective, as defined in this Chapter; and
(3) the defect in the product causes the harm."

8

complaint, defendants did not have to guess or speculate about the type of use to which their materials would be put, but rather defendants were aware of and intended that the materials they supplied would be used in the manner in which the materials were actually used.[5] The component parts doctrine (and the protection it affords to suppliers) is not addressed to such circumstances, and thus the Court of Appeal properly determined that the trial court erred in sustaining defendants' demurrers to the fourth amended complaint in reliance on *Maxton*. We disapprove the decision in *Maxton v. Western States Metals, supra*, 203 Cal.App.4th 81 insofar as it is inconsistent with this opinion.

To avoid any misunderstanding, we emphasize the limited scope of our decision in this case. We hold only that the trial court erred in sustaining defendants' demurrer in reliance on *Maxton*, *supra*, 203 Cal.App.4th 81, and that decision's reliance on the component parts doctrine. We do not address the applicability or scope of other products liability doctrines that may be implicated in this context. To prevail on their strict products liability claim, plaintiffs bear the burden of establishing either that the products supplied by defendants were defective by virtue of a design defect and that the defect caused plaintiffs' injury or that defendants breached a duty to provide adequate warnings of the dangers posed by the materials defendants supplied to Supreme Castings and that such failure to warn caused plaintiffs' injury. (See, e.g., *Johnson v. United States Steel Corp.*, *supra*, 240 Cal.App.4th at pp. 30-39; *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577, 579-583; *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1230-1236; *Schwoerer v. Union*

---

[5] Indeed, the complaint alleges that the products supplied by a number of defendants were specifically designed to meet the needs of Supreme Castings' manufacturing process.

9

*Oil Co.* (1993) 14 Cal.App.4th 103, 110-114; accord, *Gray v. Badger Mining Corp.* (Minn. 2004) 676 N.W.2d 268, 275-281.)  Furthermore, one of the questions potentially included within the duty to warn issue is whether defendants could properly rely on Supreme Castings to adequately warn its employee-users of defendants' products of the dangers posed by those products.  (Cf. *Webb*, *supra*, 63 Cal.4th at pp. 185-192 & fn. 9].)  Each of these legal issues — and the factual questions embodied in these issues — remain to be resolved in this case.

## III.  Conclusion

For the reasons discussed above, the judgment of the Court of Appeal, reversing the trial court's dismissal of plaintiffs' action on the basis of the component parts doctrine, is affirmed.

CANTIL-SAKAUYE, C. J.


WE CONCUR:

WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ramos v. Brenntag Specialties, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 224 Cal.App.4th 1239
**Rehearing Granted**

_____

**Opinion No.** S218176
**Date Filed:** June 23, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Amy D. Hogue

_____

**Counsel:**

Metzger Law Group, Raphael Metzger, Kenneth A. Holdren; Simon Greenstone Panatier Bartlett and Brian P. Barrow for Plaintiffs and Appellants.

Alexander Law Group and Richard Alexander for Council for Education and Research on Toxics, Dr. Jerrold Abraham, Dr. Richard W. Clapp, Dr. Ronald Crystal, Dr. David A. Eastmond, Dr. Arthur L. Frank, Dr. Robert J. Harrison, Dr. Ronald Melnick, Dr. Lee Newman, Dr. Stephen M. Rappaport, Dr. David Joseph Ross and Dr. Janet Weiss as Amici Curiae on behalf of Defendants and Respondents.

Lynberg & Watkins, Ruth Segal and Rosemary Do for Defendant and Respondent Porter Warner Industries, LLC.

Archer Norris, W. Eric Blumhardt, Tiffany J. Gates and Kevin L. Place for Defendants and Respondents P-G Industries, Inc., and The Pryor-Giggey Company.

Snider, Diehl & Rasmussen, Stephen C. Snider, Trenton M. Diehl and Kristina O. Lambert for Defendant and Respondent J.R. Simplot Company.

Gordon & Rees, Roger Mansukhani, Matthew G. Kleiner and Brandon D. Saxon for Defendant and Respondent Laguna Clay Company.

Schaffer, Lax, McNaughton & Chen, Jill A. Franklin and Yaron F. Dunkel for Defendant and Respondent Scott Sales Co.

Chuck Birkett Tsoong, Chuck & Tsoong, Stephen S. Chuck, Tiffany M. Birkett and Victoria J. Tsoong for Defendant and Respondent Resource Building Materials.

Gordon & Rees, Don Willenburg. P. Gerhardt Zacher and Matthew P. Nugent for Defendant and Respondent Schorr Metals, Inc.

**Page 2 – S218176 – counsel continued**

**Counsel:**

Horvitz & Levy, Lisa Perrochet, Jason R. Litt; K & L Gates, Michele C. Barnes, Nicholas P. Vari, Michael J. Ross; Gordon & Rees, Don Willenburg, P. Gerhardt Zacher and Matthew P. Nugent for Defendant and Respondent Alcoa Inc.

Bates Winter & Cameron, Bates Winter & Mistretta, David L. Winter and Christopher R. Robyn for Defendant and Respondent Southwire Company.

McGuire Woods, Diane Flannery and Joan S. Dinsmore for Defendant and Respondent Century Kentucky, Inc.

Koletsky, Mancini, Feldman & Morrow, Caldwell Law Group and Susan L. Caldwell for Defendant and Respondent TST, Inc.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendants and Respondents United States Gypsum Co. and Westside Building Material Corp.

Sedgwick, Robert Kum, Alison K. Beanum and Mathew R. Groseclose for Defendant and Respondent Brenntag Specialties, Inc., and Brenntag North America, Inc.

Shook Hardy & Bacon, Mark A. Behrens, Christopher E. Appel and Patrick Gregory for Coalition for Litigation Justice, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

Snell & Wilmer, Mary-Christine Sungaila and Jenny Hua for International Association of Defense Counsel and Federation of Defense & Corporate Counsel as Amici Curiae on behalf of Defendants and Respondents.

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendants and Respondents.

Arbogast Law, David M. Arbogast; The Bronson Firm and Steven M. Bronson for Consumer Attorneys of California as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Raphael Metzger
Metzger Law Group
401 East Ocean Boulevard, Suite 800
Long Beach, CA  90802
(562) 437-4499

Nicholas P. Vari
K & L Gates
210 Sixth Avenue
Pittsburgh, PA  15222
(412) 355-6500