Filed 3/24/22  Resendez v. Bayview Loan Servicing CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

GREGORY F. RESENDEZ,

      Plaintiff and Appellant,

v.

BAYVIEW LOAN SERVICING LLC et al.,

      Defendants and Respondents.

E076395

(Super.Ct.No. RIC1902770)

OPINION

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.  Affirmed.

Gregory F. Resendez, in Pro. Per., for Plaintiff and Appellant.

Wolfe & Wyman, Stuart B. Wolfe and Cathy L. Granger for Defendants and Respondents.

Plaintiff and appellant Gregory F. Resendez appeals the grant of the demurrer filed by respondents and defendants Bayview Loan Servicing, LLC (Bayview) and Bank of New York Mellon, as Trustee for Certificate holders CWALT, Inc., Alternative Loan

1

Trust 2006-6CB, Mortgage Pass-Through Certificates, Series 2006-6CB (BONY; collectively Lenders), and dismissal of his second amended complaint (SAC) without leave to amend.

Resendez filed his SAC against Lenders in connection with the default on a loan for his property located in Romoland. He alleged in the SAC two causes of action against Lenders for violations of the Homeowner Bill of Rights (Civ. Code,[1] §§ 2920 et. seq.) (HBOR), one cause of action for negligence, and one cause of action for a violation of Business and Professions Code section 17200, unfair competition law (UCL). The trial court granted Lenders' demurrer to the SAC and dismissed without leave to amend. Resendez contends on appeal that the trial court erred by dismissing the SAC as to all causes of action.

## FACTUAL AND PROCEDURAL HISTORY

A.    FACTS[2]

According to the operative SAC, Resendez filed the SAC against Lenders, Select Portfolio Servicing Inc. (Select Services), and the Wolfe Firm. Resendez owned the property located at 29093 Overboard Drive in Romoland, which was in Riverside County. A grant deed was recorded on February 10, 2006. Resendez obtained a mortgage loan and BONY was the beneficiary. Select Services serviced the mortgage

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] In this appeal from a judgment dismissing a complaint after the granting of a demurrer without leave to amend, we "assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

2

from approximately 2010 until November 2016 for BONY, and Bayview had serviced the loan since 2016 on behalf of BONY. The Wolfe Firm had been appointed substitute trustee on December 10, 2014, and was the current foreclosing trustee on the Resendez's home.

Resendez reached out to Bayview on December 17, 2017, in order to obtain a loan modification. John Koscinski was assigned as Resendez's single point of contact (SPOC). Resendez submitted a completed loan modification packet on January 11, 2018, and was advised the evaluation of the packet would be completed in 30 days. On January 30, 2018, he received a letter from Bayview introducing another SPOC.

On March 11, 2018, Bayview requested that Resendez send additional information. Resendez faxed the documents and received confirmation on March 14, 2018, that his loan modification packet was complete. He received a phone call from Dawn Killen, another SPOC, on March 27, 2018, ensuring him that his file was complete and that it would be at least 10 more days for a decision. On April 3, 2018, a notice of trustee's sale was taped on his front door by the Wolfe Firm. The notice of trustee's sale was recorded on April 12, 2018. The sale was scheduled for May 9, 2018.

Killen contacted Resendez on April 17, 2018. She claimed not to know about the notice of trustee's sale. She advised Resendez that his loan modification was still being considered by Bayview. On April 24, 2018, he received another call from Killen advising him that his loan modification packet would be reviewed in the next 48 hours. Bayview had misplaced documents but had found them. The foreclosure was on hold until the loan modification could be considered.

3

On April 24, 2018, he received notice from Bayview that his loan modification request had been denied and he had 30 days to appeal. On May 23, 2018, Resendez filed an appeal from the decision to deny his loan modification. On June 22, 2018, Bayview confirmed the denial of the loan modification. On July 11, 2018, he was advised that his SPOC at Bayview was Sandra Correa.

The Wolfe Firm sent Resendez notice of the trustees sale, which had been rescheduled to June 20, 2018. It was again postponed, until August 15, 2018. On August 14, 2018, Resendez filed for Chapter 13 bankruptcy protection. The trustee's sale was postponed again until September 26, 2018, and then until December 5, 2018. On December 4, 2018, Resendez filed for Chapter 7 bankruptcy protection. The Wolfe Firm postponed the sale several times to May 8, 2019. On May 6, 2019, Resendez filed his original complaint to prevent Lenders from conducting an illegal, wrongful foreclosure on his home. Resendez insisted that Lenders, the Wolfe Firm and Select Service were attempting to conduct an illegal wrongful foreclosure on his property.

B. ORIGINAL COMPLAINT AND FIRST AMENDED COMPLAINT

Resendez filed his original complaint on May 6, 2019. He alleged five causes of action, including violations of the HBOR. Specifically, sections 2923.5, 2924.11, and 2923.7. He also alleged a negligence cause of action, and a violation of the UCL. Resendez sought injunctive relief under the HBOR to stop the recording of a trustee's deed upon sale. He attached exhibits. A demurrer to the original complaint was filed by Select Services as to two of the causes of action, and Resendez filed opposition. Lenders also filed a demurrer to the original complaint. The demurrer to the complaint filed by

4

Select Services was granted on August 26, 2019, and Lenders' demurrer was granted on September 20, 2019.  Resendez was given 30 days leave to amend.

Resendez filed a first amended complaint (FAC) against Lenders, Select Services and the Wolfe Firm on October 21, 2019.  He raised the same five causes of action as in the original complaint.  The first cause of action was a claim pursuant to section 2923.5 regarding notice to him of the default.  Lenders filed a demurrer, and Resendez filed several oppositions.[3]  Lenders' demurrer to the first amended complaint was granted on January 16, 2020, and Resendez was given 20 days to amend.  However, as to the first cause of action, it was dismissed without leave to amend.

C.      SECOND AMENDED COMPLAINT

On February 5, 2020, Resendez filed his SAC.  He alleged five causes of action. He acknowledged that the first cause of action had already been dismissed by the trial court.  The second cause of action against Lenders, Select Services and the Wolfe Firm alleged a violation of section 2924.11, subdivision (a), an allegation of dual tracking. Resendez alleged that a notice of sale or trustee's sale could not be recorded while a foreclosure prevention alternative was pending.  Lenders deemed Resendez's loan modification packet complete on January 11, 2018, and Resendez sent additional documentation on March 11, 2018.  Bayview sent verification that the packet was complete on March 14.  There was further confirmation that he had submitted a completed packet on March 27, 2018.  Nonetheless, on April 3, 2018, the notice of

_____

[3]  Lenders' demurrer has not been made a part of the record on appeal.

5

trustee's sale was posted on his door and it was recorded on April 12, 2018. Resendez alleged that this was impermissible "dual tracking" as Lenders could not record the notice of trustee's sale while the loan modification was pending. Resendez rejected that section 2924.12, subdivision (c), a safe harbor provision in the HBOR for lenders who remedy their violations prior to the foreclosure sale, applied to the case. The fact that the foreclosure sale did not occur did not absolve Lenders. Resendez was entitled to injunctive relief for the violation of section 2924.11.

The third cause of action alleged a violation of section 2923.7, subdivision (b)(3), which required Bayview to provide a SPOC who provided him with information on the status of his loan. Killen had misadvised him as to the status of the foreclosure sale and his loan modification status. The fact that the loan modification was reviewed and denied before the foreclosure sale did not absolve Lenders under section 2924.12, subdivision (c).

The fourth cause of action was for negligence. Resendez acknowledged that there was a split of authority on whether a financial institution has a duty of care to a borrower. Resendez insisted that Lenders owed a duty of care in the processing of his loan modification application and breached its duty of care. Killen, his SPOC in April 2018, contacted him and advised him that Bayview had misplaced some of his documents and initially denied the loan modification based on the missing documents. However, the documents were found and the loan modification was reevaluated. Resendez insisted that Lenders were negligent by mishandling the loan modification by misplacing documents and dual tracking. As a result, he incurred additional expenses, fell further behind on his

6

loan and missed out on several opportunities to look for relief elsewhere. Further, he suffered irreparable damage to this credit.

The fifth cause of action was for a violation of the UCL. Resendez noted that under the UCL, the business practice must be unlawful, unfair and fraudulent. Lenders actions were careless, negligent and reckless conduct. Resendez alleged, "Plaintiff suffered all of these injures in addition to Dual Tracking which further led to additional fees spent as well as increases to his arrears which make further trying to obtain a loan modification that much more difficult."

Resendez demanded $150,000 in statutory damages under the HBOR, general and special damages, civil penalties including an injunction, punitive damages and costs.

Resendez attached several exhibits. This included the original application for a loan modification sent on December 31, 2017, to John Koscinski. Exhibit C was the letter from Bayview on January 5, 2018, acknowledging receipt of the loan modification request and that he would receive notice of a decision within 30 days. Exhibit D was the letter sent on January 8, 2018, advising Resendez he needed to submit additional documentation, which was sent by a different SPOC, Bibi Ghanie. On January 10, 2018, Resendez sent the documents. Exhibit F was the confirmation sent on January 11, 2018, that the loan modification request was complete and would be reviewed in 30 days. Exhibit G was Killen's letter to Resendez identifying herself as the SPOC as of January 30, 2018.

Exhibit H was the notice sent on February 9, 2018, that his application was incomplete, and advising him to submit further documentation. Resendez faxed the documents on March 11, 2018. Exhibit K was the notification on March 21, 2018, that he did not qualify for loan modification because his request was incomplete as documents were missing. Exhibit L was a document purporting to memorialize that Killen contacted him on March 27, 2018, advising him to disregard the letter on March 21, indicating it was sent in error. She advised Resendez that the underwriting department was busy but she hoped to get back to him in 10 days.

Exhibit M was the notice of trustee's sale that was taped on Resendez's front door on April 3, 2018. It was recorded on April 12, 2018, and the sale was set for May 9, 2018. Exhibit Q was the denial of his loan modification that was sent to him on April 24, 2018, explaining that he would not be eligible for a loan modification based on the loan amount and his income.

Resendez also included several notices sent to him by The Wolfe Firm postponing the trustee's sale. Exhibits W and Z show that Resendez filed Chapter 13 bankruptcy on August 14, 2018, and filed Chapter 7 bankruptcy on December 4, 2018.

Lenders apparently filed a demurrer to the SAC on March 10, 2020, but that document has not been included in the record. Resendez also filed a reply to the demurrer on September 17, 2020, but that has also not been included in the record.

D.    TRIAL COURT RULING

The trial court issued a tentative ruling on September 30, 2020.  The trial court found that regardless of whether there were material issues of fact regarding Lenders' alleged violations of sections 2923.6[4] and 2923.7, Lenders fell within the safe harbor provision of section 2924.12, subdivision (c).  The safe harbor provision provides that a mortgage servicer shall not be liable for any violation of the HBOR if the violation has been corrected and remedied prior to the recordation of the trustee's deed on sale.  The trial court found, "[Resendez] alleges in the SAC that [Lenders] ultimately deemed the loan modification application complete, subsequently reviewed and denied the application and upheld the decision following [Resendez]'s appeal—all of which occurred prior to the recordation of a trustee's deed of sale (in fact, no sale has taken place) . . . As such—and based solely upon the facts alleged in the SAC—Civ. Code § 2924.12(c) shields [Lenders] from any liability for their alleged violations of Civ. Code §§ 2923.6 and 2923.7."

The trial court further ruled as to the fourth and fifth causes of action.  "As to [Resendez]'s fourth cause of action for negligence, as the court noted in its prior ruling, a lender generally does not owe a duty of care to a borrower where there are no allegations that the lender did anything wrongful that prevented the borrower from making the original monthly payments under a loan.  [Citations.]  Here, the SAC contains no

_____

**4**  Despite Resendez alleging in the second cause of action that the violation was of section 2924.11, the trial court analyzed the claim under section 2923.6.  This appears to be because section 2924.11 only applies to approved loan modification applications.

9

allegations to demonstrate [Lenders] acted outside the scope of a traditional lender and/or servicer. Instead, [Resendez] simply added argument to the SAC—the same argument that had been previously rejected by this Court. (See SAC, ¶¶ 57-67.) Finally, [Resendez]'s UCL cause of action is entirely derivative of his other causes of action . . . and thus fails as a matter of law."

Resendez did not request oral argument. On October 22, 2020, the trial court adopted the tentative ruling, and dismissed the SAC against Lenders without leave to amend. Notice of entry of judgment was filed on November 11, 2020. Resendez filed his appeal on January 5, 2021.

## DISCUSSION

Resendez essentially claims that the trial court erred by dismissing the SAC as to all "five" causes of action.

### A. STANDARD OF REVIEW

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).)

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties." (*Regents of University of*

10

*California v. Superior Court* (2013) 220 Cal.App.4th 549, 558; see also *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 303-304.)

We initially note the trial court considered that the SAC only contained four causes of action. Resendez attempts to argue on appeal that the first cause of action in the FAC was wrongfully dismissed by the trial court. This was a claim of a violation of section 2923.5—notice of default contact requirements. However, in the SAC, Resendez stated, "[O]n January 16, 2020, the Court sustained Defendant Bayview's Demurrer to the First Cause of Action to the FAC also without leave to amend." Resendez made no other argument. The first cause of action was dismissed and is not properly reviewed on appeal from the dismissal of the SAC.

B.     HBOR PROVISIONS

Resendez contends the trial court erred by dismissing the first and second causes of action finding that the safe harbor provision of section 2924.12, subdivision (c), applied.

The HBOR was enacted "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (§ 2923.4.) Among other things, HBOR prohibits "dual tracking," which occurs when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure. (§ 2923.6.) Section 2923.6, subdivision (c) provides, in part, "If a borrower submits a complete application for a first lien loan modification offered by, or through, the

11

borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:  [¶]  (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired."

"Under the practice of dual tracking, financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application.  'The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it.'  [Citation.]  Section 2923.6 bars this practice and regulates servicers' consideration of loan-modification applications."  (*Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830, 848.)

Here, the Wolfe Firm notified Resendez, while the loan modification process was ongoing, of the scheduled notice of trustee's sale.  That sale never occurred, but it does appear that this notice was in violation of section 2923.6, as Lenders were actively reviewing Resendez's request for a loan modification.

As for the third cause of action, section 2923.7, subdivision (a) provides that "When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." "For purposes of this section, 'single point of contact' means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." (§ 2923.7, subd. (e).) The SPOC shall keep the borrower advised, among other things, as to the status of his or her loan, available foreclosure prevention alternatives, inform the borrower of the current status of any loan modification, and be able to stop the foreclosure proceedings when necessary. (§ 2923.7, subdivision (b).)

The SPOC requirement helps prevent borrowers from being "given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 905.) Only a material violation of the SPOC requirement is actionable. (§ 2924.12, subd. (a)(1).)

Here, Resendez was assigned several SPOCs at Bayview. Bayview clearly communicated who the SPOC was, and they were responsive to Resendez's inquiries. However, Killen advised Resendez she had no idea that a notice of trustees sale had been recorded, information she should have known. For purposes of this argument, we will assume that Resendez showed that there was a violation of section 2923.7.

13

"Section 2924.12, subdivision (c) encourages mortgage servicers to cure any material violation by providing a safe harbor:  'A mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the [foreclosure sale] . . . .'  [Citation.]  Thus, in the context of damages liability, the material effect of a violation must be measured after the foreclosure sale is recorded.  By the statute's terms, a temporary disruption of the normal foreclosure process that is corrected and causes no lasting harm to the borrower's rights will give rise to no liability."  (*Billesbach v. Specialized Loan Servicing LLC*, *supra*, 63 Cal.App.5th at p. 845.)

Here, prior to the foreclosure sale (if one even occurred), Lenders found that Resendez had submitted a complete loan modification application, it reviewed the application, and denied it on its merits.  Lenders cured any violations prior to pursuing the foreclosure sale.

Resendez insists the provision does not apply to Lenders because they did not ever "correct" or "remedy" the violations of section 2923.6 and 2923.7 because it was his filing of the instant lawsuit that stopped the foreclosure sale.  However, the correction found by the trial court was that Lenders clearly reviewed Resendez's loan modification once it deemed it complete and denied it based on his income, not because of missing documents.  Resendez does not claim that the loan modification was improperly denied. Further, Lenders remedied the notice of foreclosure, the dual tracking, by putting the foreclosure on hold until it could complete review of Resendez's loan modification and appeal.  In fact, as of the filing of the original complaint, no foreclosure sale had occurred.

14

Resendez refers to *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, which he claims is "similar" to this case. However, in *Valbuena*, the lender actually foreclosed on the property while the loan modification process was ongoing. (*Id.* at pp. 1270-1271) It is unlike this case wherein Lenders stopped the foreclosure process while the loan modification process was ongoing, and there was no sale. There is no doubt that section 2924.12, subdivision (c), applies in this case and warranted dismissal of the second and third causes of action.

C.    NEGLIGENCE

Resendez contends the trial court erred by finding that Lenders did not owe a common law duty of care in processing his loan modification application. He insists that Lenders breached their duty of care and caused him injury giving rise to a negligence claim. After oral argument in this case, the California Supreme Court issued its opinion in *Sheen v. Wells Fargo Bank, N.A.* (2022) ___ Cal.5th ___ [2022 WL 664722] (*Sheen*) addressing the split of authority in the appellate courts as to whether a lender owes a duty to a borrower to process, review, and respond carefully and completely to a borrower's loan modification application. The California Supreme Court has concluded that a lender does not owe a duty to a borrower in processing a borrower's loan modification application.

" 'Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if " 'the plaintiff's interests are entitled to legal protection against the defendant's conduct.' " [Citation.] Whether a duty exists is a question of law to be resolved by the court.' [Citations.] 'A duty of care may arise through statute' or by

15

operation of the common law." (*Sheen*, *supra*, ___ Cal.5th ___ [2022 WL 664722 at *5].)

Prior to *Sheen*, several courts had found a lender has a duty of care in situations where the lender or servicer voluntarily undertakes to renegotiate a loan modification and breached the duty to exercise reasonable care in processing the loan modification application. (*Weimer v. Nationstar Mortgage, LLC* (2020) 47 Cal.App.5th 341, 347-348; *Rossetta v. Citi Mortgage, Inc.* (2017) 18 Cal.App.5th 628, 640; accord *Daniels v. Select Portfolio Servicing Inc.*(2016) 246 Cal.App.4th 1150, 1180-1183 (*Daniels*); *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 948 (*Alvarez*). Another appellate court found that there was no common law duty of care to offer, consider, or approve a loan modification. (See *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 68.)

Several of these courts considered the question of whether a lender owes a common law duty to a borrower when considering a loan modification by evaluating the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), which held that whether the defendant in a specific case "will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors," including: (1) "the extent to which the transaction was intended to affect the plaintiff," (2) "the foreseeability of harm to [the plaintiff]," (3) "the degree of certainty that the plaintiff suffered injury," (4) "the closeness of the connection between the defendant's conduct and the injury suffered," (5) "the moral blame attached to the defendant's conduct," and (6) "the policy of preventing future harm." (*Id*. at p. 650.)

16

For example, the court in *Alvarez, supra*, 228 Cal.App.4th 941, applied the *Biakanja* factors. In that case, the lender relied on inaccurate information in the loan modification documents to deny the loan modification. Further, the lender stated that no documents had been received on another loan modification application when in fact the documents were submitted by the borrower. (*Alvarez*, at pp. 944-945.) The court found that the failure to "timely" and "carefully process" the loan modification application could cause significant harm to the applicant. (*Id.* at pp. 948-949.) Similarly, in *Daniels*, *supra*, 246 Cal.App.4th 1150 the court found, "a lender may owe a duty of care to a borrower based on the *Biakanja* factors, despite the fact that the lender was acting as a conventional lender." (*Id.* at p. 1181.) Applying the factors in *Biakanja*, the court in *Daniels*, concluded that the factors weighed in favor of the plaintiff based on the lender advising him to stop making payments so he could seek a loan modification and taking years to decide on the loan modification. (*Daniels,* at pp. 1182-1183.) In the SAC, Resendez relied on the common law duty of care and the *Biakanja* factors to support that Lenders owed him a duty of care.

The California Supreme court has now rejected that a lender owes a duty of care to a borrower in processing and reviewing a loan modification application. In *Sheen*, the borrower submitted loan modification applications to Wells Fargo on second and third loans he obtained on his property after being notified of defaults on the loans. The plaintiff never heard from Wells Fargo about the loan modification applications and received notice that the entire debt had been accelerated and was due and owing. The third loan was forgiven by Wells Fargo and the second loan was eventually sold. The

entity that purchased the second loan foreclosed on the property. The plaintiff filed his complaint alleging, among other things, that Wells Fargo had a common law duty to process, review and respond carefully and completely to his loan modification request to avoid causing him monetary loss. The trial court granted Wells Fargos's demurrer to the complaint finding no duty and the appellate court affirmed. The California Supreme Court granted review on the question of whether a lender had a duty to borrower to process, review, and respond carefully and completely to borrower's loan modification application. (*Sheen*, *supra*, ___ Cal.5th ___ [2022 WL 664722 at *2-5].)

The California Supreme Court first noted that the plaintiff only alleged a common law duty of negligence, and did not rely on any statute or regulation that may impose a duty to avoid purely economic losses. Similarly here, Resendez relies only on common law to support his negligence claim.[5] The court concluded that there was no common law duty "in light of the economic loss rule" which provides that "there is no recovery in tort for negligently inflicted 'purely economic losses' meaning financial harm unaccompanied by physical or property damage." It found that the plaintiff had provided no persuasive argument to ignore the economic loss rule and found no common law duty to support a negligence claim. (*Sheen*, *supra*, ___ Cal.5th ___ [2022 WL 664722 at *6-15].)

The California Supreme Court also rejected that the factors in *Biakanja* applied. (*Sheen*, *supra*, ___ Cal.5th ____ [2022 WL 664722 at *15, *19].) The court found,

---

[5] The court mentions the HBOR but does not specifically state that it created a duty on behalf of Lenders. (*Sheen*, *supra*, ___ Cal.5th ___ [2022 WL 664722 at *5-6].)

18

"*Biakanja* itself thus makes clear that its multifactor test finds application only when the plaintiff is a 'third person not in privity' with the defendant. [Citation.] Under its terms, *Biakanja* does *not* apply when the plaintiff and defendant are in contractual privity for purposes of the suit at hand. . . . *Biakanja* does not displace the contractual economic loss rule when that rule squarely applies." (*Ibid.*)

Finally, the California Supreme Court rejected that any policy considerations or the policy of preventing future loss gave rise to a negligence action. (*Sheen*, *supra*, ___ Cal.5th ____ [2022 WL 664722 at *19-21].) The court also encouraged the Legislature to consider the issue because it was in a better position to determine "what additional protection homeowners in California should be afforded." (*Id.* at *22.) It also found, "To the extent they are inconsistent with our opinion, we disapprove of *Weimer v. Nationstar Mortgage, LLC*, *supra*, 47 Cal.App.5th 341 []; *Rossetta v. CitiMortgage, Inc.* , *supra*, 18 Cal.App.5th 628 []; *Daniels*, *supra*, 246 Cal.App.4th 1150 []; and *Alvarez . . .*, *supra*, 228 Cal.App.4th 941." (*Sheen*, *supra*, ___ Cal.5th ____ [2022 WL 664722 at *22, fn. 12].)

Based on the foregoing, Lenders did not owe a duty of care in processing and reviewing Resendez's loan modification application. The trial court did not commit error by dismissing the negligence cause of action.

D.    UCL

Resendez's fifth cause of action was dismissed as being derivative of the other claims. Resendez alleged that due to the dual tracking he incurred additional fees and the inept handling of his loan modification was unfair and unlawful. These were the

19

allegations of the second and fourth causes of action. Resendez's UCL cause of action is derivative of the other causes of action asserted in the complaint and thus "stands or falls" with those claims. (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277; see also *Myles v. PennyMac Loan Services, LLC* (2019) 40 Cal.App.5th 1072, 1075.) The trial court properly dismissed the fifth cause of action.

E.     LEAVE TO AMEND

A party seeking to amend must set forth precisely what factual allegations are to be added. (*Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 664.) "The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations that sufficiently state all required elements of that cause of action.' " (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95, disapproved on other grounds by *Ramos v. Brenntag Specialties, Inc.* (2016) 63 Cal.4th 500; see also *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962 [noting the plaintiff bears the "burden on appeal to show in what manner it would be possible to amend a complaint to change the legal effect of the pleading," and further noting a court of review "otherwise presume[s] the pleading has stated its allegations as favorably as possible"].) Resendez has not requested leave to amend his complaint and made no showing that the foregoing defects can be cured. We, therefore, find no reasonable possibility of amendment.

## DISPOSITION

The judgment is affirmed.  As the prevailing party, Lenders are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                                         
Acting P. J.

We concur:

CODRINGTON                    
J.

SLOUGH                         
J.